574 So.2d 573 (1990)
Floyd LAMBERT, Jr.
v.
STATE of Mississippi.
No. 89-KA-0576.
Supreme Court of Mississippi.
December 12, 1990.
*574 Thomas J. Lowe, Jr., Jackson, William E. O'Hare, Smith & O'Hare, Cleveland, for appellant.
Mike C. Moore, Atty. Gen., Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and SULLIVAN, JJ.
ROBERTSON, Justice, for the Court:
Today's appeal asks that we judge behavior no more fathomable that it has become so familiar. A man has repeatedly sexually molested his young stepdaughter and when called to account, presents the familiar denials and defenses. The case in the end turns on an evidentiary question which commands no small amount of sensitivity on our part. We hold that the hearsay statement of the victim was erroneously received as evidence but that the error is legally harmless, as the victim testified and was subject to cross-examination on the matters in issue.

II.
Alicia A.[1] was born October 22, 1974. For years Alicia lived with her mother, stepfather and stepbrother in rural Bolivar County, out from Beulah, Mississippi.
On October 9, 1981, Floyd Lambert, Jr., Alicia's stepfather, was twenty-four years of age, having been born on September 22, 1957. On that night Lambert took the six-year-old Alicia from her bed, and tied her up and raped her. Alicia was taken to the emergency room of the Bolivar County Hospital in Cleveland where she was seen and treated by Dr. Arthur Lindsey, Jr., a family practitioner, and by Dr. Abide, a gynecologist, who at the time of trial was deceased. Dr. Abide's records reflect that he found lacerations and bleeding from the vaginal area which he diagnosed as "vaginal trauma."
Alicia testified that Lambert repeatedly forced her to have sex with him over the next six years or so, often two or three times a week, and that he would force her to perform oral sex on him at times before intercourse. The last of these incidents occurred about March 6, 1988. Lambert would often times use a condom to keep Alicia from getting pregnant. Alicia told her mother what was happening, a fact which at trial her mother denied.
The whole sordid affair came to light on April 14, 1988. Alicia was a student in the seventh grade at Rosedale Junior High School. Jane Shook, a school nurse employed by the Bolivar County Health Department, went to Rosedale Junior High and presented an awareness program to the seventh grade students. She asked any student who was having a problem to let her know in writing. Alicia wrote on a form Shook had given her, "I have a problem that I would like to talk about." Alicia then reported to Shook what her stepfather had been doing to her which led to Lambert's arrest.
On October 4, 1988, the Grand Jury for the First Judicial District of Bolivar County, Mississippi, returned an indictment and in Counts 1 and 2 charged Lambert with statutory rape of Alicia A. on October 9, 1981, and on March 6, 1988. Miss. Code Ann. § 97-3-65(1) (Supp. 1988). The indictment further charged in Count 3 that Lambert had committed sexual battery upon Alicia A. on March 6, 1988, by requiring that she perform fellatio on him. Miss. Code Ann. § 97-3-95(c) (Supp. 1988). The case was called for trial on October 31, 1988, and in due course the jury found Lambert guilty on all counts. On November 16, 1988, the Circuit Court sentenced Lambert (a) to thirty years imprisonment upon his conviction of rape in Count 1, (b) *575 to twenty years imprisonment upon his conviction in Count 2, the sentence to be served after completion of Lambert's service of the sentence imposed in Count 1, and (c) to ten years imprisonment upon his conviction on Count 3, that sentence to be served by Lambert following completion of his service of the sentences imposed on the two rape charges. Lambert's aggregate sentence is sixty years imprisonment.
Lambert moved for a new trial and his motion was denied. He now appeals to this Court.

III.
Lambert makes no challenge to the sufficiency or weight of the evidence against him on any of the three counts. Notwithstanding, we have carefully examined the record of proceedings against him, because of the gravity of the charges and the severity of the sentences. Alicia A. testified at trial quite credibly and, together with the other facts and circumstances presented, we are without doubt that the evidence was legally sufficient that Lambert may stand convicted on each of the three counts. Moreover, we perceive no deficiency in the weight of the evidence such that the Circuit Court may be said to have abused its discretion in denying Lambert's motion for a new trial.

IV.
Lambert has designated two issues on this appeal, one of which we may dispatch summarily. The prosecution called as an expert witness Dr. Henry McCrory, a specialist in obstetrics and gynecology who practices medicine in Clarksdale, Mississippi. Dr. McCrory testified that he had examined Alicia A. and, based upon his physical and medical findings, he was of the opinion that she had been sexually active for a number of years. In the words of Dr. McCrory, "My findings were consistent with a lady who had had sexual intercourse frequently over a prolonged period of time, for years." Dr. McCrory, of course, made no attempt to state who Alicia's sexual partner(s) may have been.
On appeal, Lambert charges that receipt of this testimony was error. He argues that this testimony had the effect of telling the jury that Lambert had raped Alicia repeatedly "for five years, two to three times a week." Lambert argues that this offends Rule 404(b), Miss.R.Ev., which proscribes production of evidence of other crimes, wrongs or acts except under limited circumstances.
The point is without merit. First, Lambert offered no objection to this testimony at trial. He thus waived any right to present the matter on appeal. See Rule 103(a)(1), Miss.R.Ev. Lambert argues that we nevertheless consider the point. We decline to do so. Lambert's strategy, beginning with opening statement, was, not to deny that Alicia had been sexually active, only to deny that he had been her sexual partner. In opening statement and throughout trial, Lambert attempted to show that Alicia would try frequently to go into Rosedale where she ran around with boys. Cf. Hosford v. State, 560 So.2d 163, 169 (Miss. 1990). We perceive no potential for injustice suggesting we should waive our procedural rule in the premises.

V.

A.
Lambert's primary complaint on appeal is that the prosecution was allowed to present to the jury statements Alicia had made to others to the effect that he had raped and molested her, all of which Lambert says offends the hearsay rule. See Rule 802, Miss.R.Ev. He identifies five prosecution witnesses through whom the said-to-be offensive hearsay statements were offered: (1) Jane Shook; (2) Elbert Craig, an investigator with the Bolivar County Sheriff's Department; (3) Queen Esther Coleman, a Bolivar County welfare worker; (4) Dorothy Marie Johnson, the Lambert's neighbor; and (5) Shonnie Harris, Alicia's aunt, with whom Alicia was living at the time of trial.
Four of these may be dealt with quickly. The case of the statements elicited through welfare worker Coleman and *576 Alicia's aunt, Shonnie Harris, Lambert's attorney made timely and proper objections which the Court sustained. The Court denied Lambert's motions for mistrial but did instruct the jury to disregard the answers given. We have repeatedly held such an antidote sufficient unto the day. See, e.g., Dennis v. State, 555 So.2d 679, 682 (Miss. 1989); Shoemaker v. State, 502 So.2d 1193, 1195 (Miss. 1987).
In the case of Sheriff's Investigator Craig and Lambert's neighbor, Dorothy Johnson, no objection was offered and Lambert may not argue these points for the first time on appeal. Rule 103(a)(1), Miss.R.Ev. Moreover, from our reading of the record it appears quite likely that Lambert's attorney may have consciously not objected to Investigator Craig's testimony as he proceeded on cross examination to explore discrepancies between two statements Alicia had given.

B.
This brings us to the evidence elicited through Health Department Nurse Jane Shook. It is important to understand that Shook was the first witness called by the prosecution at the beginning of the trial. As indicated above, Shook testified that she received a written note from Alicia to the effect that "I have a problem that I would like to talk about." The prosecuting attorney then asked "What was that problem?" At that point defense counsel stated the following objection:
Your Honor, I object to Mrs. Shook testifying as to hearsay. The proper predicate has not been laid for the introduction of that hearsay.
The prosecuting attorney then established that Alicia was thirteen years old at the time and that she had not mentioned her problem to anyone else in the school system and that she came to Shook for help. Then the prosecuting attorney asked to be allowed to introduce Alicia's statements to Shook. At that point the record reflects:
BY THE COURT: Approach the bench, please.
WHEREUPON, THE ATTORNEYS FOR BOTH PARTIES APPROACHED THE BENCH FOR A BRIEF CONFERENCE OUT OF THE HEARING OF THE COURT REPORTER.
The next matter the court reporter has preserved for the record has the prosecuting attorney repropounding his objected-to question, to which Shook answered that Alicia "said that her stepfather had made her have sex with him... . I asked her how long this had been going on and she said, `when I was in the first grade was the first time'."
Then the following colloquoy took place:
Q. It had gone on for a long period of time?
A. This is what she told me.
Q. Now, Mrs. Shook, when you were talking with the girl, what was her demeanor? In other words, how was she acting?
A. Her first statement to me was, "I don't think anything is going to be done about this, but I am going to tell you about it." Then she told me that her stepfather had made her have sex with him.
BY MR. ATKINSON: Your Honor, I have a continuing objection, based on the grounds that I enumerated a minute ago 
BY THE COURT:  I am going to overrule the objection. But it is getting repetitious, Mr. Mellen.
BY MR. MELLEN: Well, I was asking about the demeanor, how she was acting.
BY THE COURT: That is all right. But that is not what she testified to.
The Court nevertheless overruled the objection.
Lambert's point on appeal is that the Circuit Court committed error when it allowed Nurse Shook to state on at least two occasions that Alicia had told her (Shook) that her stepfather had made her have sex with him and that Alicia had said this took place beginning when she was in the first grade and continued over a long period of time. Not one word in the brief for the prosecution on appeal tries to defend *577 this ruling on the merits.[2] We regard it elementary that such testimony is inadmissible hearsay. Rule 802, Miss.R.Ev.
The argument for affirmance is procedural: that Lambert did not properly preserve the point. See Rule 103(a)(1), Miss. R.Ev. We need to be clear of exactly what happened.
The first time the prosecuting attorney asked a question with the apparent propensity for eliciting Shook's statement of what Alicia may have told her, defense counsel objected. He stated "hearsay" as his grounds. He also stated that no predicate had been laid, which we may only assume referred to one or more of the recognized exceptions to the hearsay rule. See Rules 803, 804, Miss.R.Ev. Nothing in the record suggests what predicate defense counsel may have had in mind. The prosecuting attorney then asked a few more questions which established only that Alicia was thirteen years of age at the time she made the statements to Nurse Shook. This was no predicate of consequence for the so-called tender years exception to our hearsay rule had been abolished effective January 1, 1986. See Hosford v. State, 560 So.2d 163, 167 (Miss. 1990); Leatherwood v. State, 548 So.2d 389, 399 (Miss. 1989); Mitchell v. State, 539 So.2d 1366, 1369 (Miss. 1989). The record then reflects that a bench conference took place "out of the hearing of the court reporter." After the bench conference Shook gave three hearsay answers of consequence without further objection. It is important that moments later, in an answer completely unresponsive to a prosecution question, Shook repeated that Alicia had told her that her stepfather made her have sex with him, at which point defense counsel stated "I have a continuing objection based on the grounds that I enumerated a minute ago  ."
Continuing objections are allowed under our rules. See Rule 103, Miss.R.Ev. Because the record is lacking, we may not be entirely clear to what counsel referred by the phrase "on the grounds that I enumerated a minute ago." If he referred to his initial objection the grounds were hearsay and failure to lay a proper predicate. The unresponsive answer at issue certainly qualified as hearsay and there is no record of any predicate bringing it within any legally cognizable exception to the hearsay rule. It may also be that counsel referred to grounds enumerated at the bench conference held out of the hearing of the court reporter and with respect to which we have no transcript.
Our law is clear that an appellant must present to us a record sufficient to show the occurrence of the error he asserts and also that the matter was properly presented to the trial court and timely preserved. Moawad v. State, 531 So.2d 632, 635 (Miss. 1988); Williams v. State, 522 So.2d 201, 209 (Miss. 1988). In this context, we note that counsel for Lambert properly noticed his appeal and in connection therewith, designated for inclusion in the record "all in-chamber conferences." This would certainly include a "bench conference."
We have repeatedly over the years admonished that our court reporters take down and have available for reproduction in transcribed form for use on appeal all proceedings at trial, period. See Doby v. State, 557 So.2d 533, 536 n. 2 (Miss. 1990); Winters v. State, 473 So.2d 452, 457 (Miss. 1985); Dorrough v. State, 437 So.2d 35, 37 (Miss. 1983). The record before us today reflects progress in this direction for the transcript includes two areas commonly pretermitted in the past: voir dire examination of the prospective jurors and opening statements and final arguments. See Myers v. State, 565 So.2d 554, 556 n. 1 (Miss. 1990). Inexplicably, the record does not reflect the critical bench conference regarding the controverted hearsay testimony from prosecution witness Shook. Under the circumstances, we perceive no grounds for charging Lambert and his attorney[3] *578 with responsibility for the fact that the court reporter did not take down what transpired. His designation of record on appeal is all-inclusive and specifically mentions "all in-chamber conferences." On the other hand, we do not think it appropriate that we invent matters not fairly within the record. See Johnson v. State, 475 So.2d 1136, 1142 (Miss. 1985).
We approach the critical portion of the trial with a common sense awareness of how at the trial level court and counsel proceed regarding objections of the sort here made. Quite clearly, defense counsel at the first appropriate opportunity called to the Court's attention his objections to "hearsay" and lack of a proper predicate. When the critical bench conference occurred, there is no ground for assuming counsel and the Court were discussing anything other than the objection made. Whether defense counsel further articulated his grounds, we may not know. It is quite possible, for example, that the question may have come up whether Alicia was "unavailable" and that his reference to failure to lay a proper predicate could have referred to unavailability under Rule 804(a). When the record reflects that less than ten questions later defense counsel again objects "on the grounds that I enumerated a minute ago," this must at the very least be taken to mean the hearsay and lack of predicate grounds.
Under the circumstances, we hold that timely and proper objection was made within Rule 103(a)(1) and that, on at least two occasions, Nurse Shook was allowed to give hearsay testimony that Alicia's stepfather made her have sex with him. The Circuit Court's refusal to interdict this testimony was error.

C.
Our question now becomes whether this error is of such proportions that we must reverse. At issue, of course, is whether Lambert's substantial right to a fair trial has been abridged. See Jackson v. State, 551 So.2d 132, 144-45 (Miss. 1989); Ponthieux v. State, 532 So.2d 1239, 1248 (Miss. 1988); Rule 103(a), Miss.R.Ev. Where the hearsay evidence relates to points at the core of the charge laid in the indictment and where the victim does not testify, we have reversed, see Hall v. State, 539 So.2d 1338, 1348 (Miss. 1989), for the defendant has been denied rights of confrontation and cross-examination.
In today's case the victim and prosecutrix, Alicia A., did appear at trial and testified in detail regarding her stepfather's abusive treatment of her. More important, Lambert had every opportunity to confront Alicia face-to-face in the courtroom and through his attorney to test her testimony via cross-examination and, in fact, Lambert's attorney took full advantage of that opportunity. Moreover, Nurse Shook's report to the jury of what Alicia told her included nothing that Alicia did not testify about in much greater detail on both direct and cross-examination.[4]
There are further nuances. First, Nurse Shook's contested testimony partakes of an explanation why she proceeded further with the matter and reported the case to law enforcement authorities. Cf. Jackson v. State, 551 So.2d 132, 142 (Miss. 1989). She said nothing not reasonably inferrable from the other facts and circumstances presented at trial. Second, Shook's testimony at worst bolsters what Alicia testified to, cf. Hosford v. State, 560 So.2d 163, 167 (Miss. 1990), not to mention the unobjected to and quite comparable hearsay testimony the prosecution presented through Sheriff's Investigator Elbert Craig and Lambert neighbor Dorothy Marie Johnson. Under the circumstances, we may only conclude *579 that the chances are slim and none that the jury may have returned a different verdict had it not heard the hearsay testimony here at issue. We hold the error insufficient to require reversal. Rule 103(a), Miss.R.Ev.; see also, State v. Burns, 524 A.2d 564, 568 (R.I. 1987); Salter v. State, 500 So.2d 184, 186 (Fla.App. 1986).
CONVICTION OF THE CRIME OF RAPE IN COUNT I; RAPE IN COUNT II, AND SEXUAL BATTERY IN COUNT III, AND SENTENCE IN COUNT I TO SERVE THIRTY YEARS UNDER THE SUPERVISION AND CONTROL OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS TO RUN CONSECUTIVE TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED; TO SERVE TWENTY YEARS IN COUNT II, AND TEN YEARS IN COUNT III, TO RUN CONSECUTIVE TO SENTENCE IMPOSED IN COUNTS I AND II, AFFIRMED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
HAWKINS, P.J., concurs with specially concurring opinion joined in part by BLASS, J.
HAWKINS, Presiding Justice, specially concurring:
I concur in the affirmance of this case. For whatever reason and for whatever duration, it is encouraging to observe the majority of this Court reaching a balanced judgment in a child sexual abuse case. Goodson v. State, 566 So.2d 1142 (Miss. 1990), Hawkins, J., dissenting at 1155, where the proper objection was not made, either, the majority took pains to reverse on far more innocuous testimony than here. The erratic oscillation of Goodson cannot be squared with this case in my view, and I find some comfort that this case is decided subsequent to Goodson rather than the other way around.
I am compelled to write, however, because the majority takes pains to cite Hall v. State, 539 So.2d 1338 (Miss. 1989), an egregious oscillation to unbalanced judgment, and which I can never accept as a valid decision.[1] This Court in Hall usurped it Constitutional authority, seized a power it does not have, and struck down a valid Legislative enactment as beyond the Legislative Branch of this Government's power to enact. The majority there held that only this Court has the authority to enact a law (euphemistically termed a "rule") on evidence in child sexual abuse cases. The majority also cites Mitchell v. State, 539 So.2d 1366 (Miss. 1989), which as Hall is a usurpation of Constitutional power, and Leatherwood v. State, 548 So.2d 389 (Miss. 1989), which  to the extent that it relies on Hall  should be overruled.
BLASS, J., joins this opinion in part.
NOTES
[1] The name "Alicia A." is fictitious  for obvious reasons.
[2] The matter may not be salvaged through Rule 801(d)(1), Miss.R.Ev., if for no other reason that Nurse Shook testified before Alicia took the stand. See Hosford v. State, 560 So.2d 163, 167 (Miss. 1990).
[3] In point of fact, the attorney who handled the post-trial matters and perfected Lambert's appeal died shortly thereafter.
[4] We have cases where we have found hearsay errors and reversed notwithstanding that the victim testified. See Leatherwood v. State, 548 So.2d 389, 397-402 (Miss. 1989); Mitchell v. State, 539 So.2d 1366 (Miss. 1989). In those cases the erroneously admitted hearsay evidence was far more central to the case for the prosecution than in today's case.
[1] I am not unmindful of a judge's obligation to accept as settled a principle of law decided by a majority of this Court, even though he did not, and does not agree with it. I cannot accept Hall, however, and feel duty bound to protest every instance in which it is cited as authority, because it is a usurpation of a Constitutional power this Court does not, and never did have.