580 So.2d 739 (1991)
Earnest (Donnie) GIBSON
v.
STATE of Mississippi.
No. 90-KA-0317.
Supreme Court of Mississippi.
May 15, 1991.
Cleve McDowell, Drew, for appellant.
Mike C. Moore, Atty. Gen., Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the court:

I.
This case presents a disturbing story of life and law in the present age, no less disturbing that it has become so familiar. The prosecution relies on a confidential informant, himself under the gun for felony charges, to help put a dent in the community's tragic trafficking in crack cocaine. The informant selects his mark, makes his buy, on two successive days, and we have appeals from a rather straightforward trial of the two charges, upon which the Circuit Court meted out rather stiff sentences. As the Appellant presents no point requiring reversal, we affirm.

II.
The broader context is the drug scourge so extensive in today's society. From the record in this case, the problem appears prevalent in Indianola, Mississippi.
Enter Dale Renee Bell, a twenty-seven year old grocery store warehouseman, who has been charged with the felony of receiving stolen property. Bell found himself in considerable jeopardy on this charge, although we do not adjudge his guilt, for in early December, 1989, he approached Indianola police officials and offered to assist in drug enforcement if, in exchange for his services, he could avoid any jail time or prison sentence on his own problems with the law. It should be added that Bell had been in the past at least an occasional marijuana user by his own admission and *740 expressed familiarity with the drug scene in Indianola. The police bought the deal, and Bell went to work.
On December 8, 1989, Dale Bell began to ply his new-found trade. He acted with the assistance of two Indianola Police Department Investigators, Elvis Purnell and Tommy Anderson. In mid-day, Bell was wired with a body microphone. Investigators Purnell and Anderson were to serve as backup surveillance to listen to what transpired and make a recording of any audible conversations or sounds. The Investigators then dispatched Bell to the streets of Indianola, giving carte blanche to select his location and mark.
Bell approached the Chicago Club and entered it. He saw Earnest Gibson, whom he knew as Donnie Gibson. Gibson and Bell were approximately the same age, Gibson having been born February 24, 1963. Bell said he had known Gibson for some twelve or thirteen years, and the two are distantly related by marriage. Gibson has been a drug user and has had an addiction problem for some four years by his own admission, a fact also well known by Dale Bell.
By this point, it was some 2:00 o'clock in the afternoon. Bell approached Gibson and "asked him did he have anything and he said, yeah." Gibson told Bell to go stand back by the bathroom door while Gibson went around behind the counter and came back with a small quantity of cocaine. Bell then handed Gibson a twenty dollar bill, in pre-marked currency, and Gibson delivered the cocaine.
On the following day, December 9, 1989, Bell returned to the Chicago Club, this time having in mind a possible buy from someone named Hamp. Once inside the club, Bell did not see Hamp. He did see Gibson and approached him again with the same question, "hey man, you got some?" A similar transaction as the day before then took place, with Gibson delivering to Bell "a little white round rock" of cocaine, and Bell delivering twenty dollars to Gibson.
In each case, the substances Bell purchased from Gibson were sent off to the State Crime Laboratory to be analyzed and were shown to be cocaine without any serious question or doubt.
On January 22, 1990, the grand jury for Sunflower County returned separate indictments charging Gibson with the sale of cocaine, a Schedule II controlled substance, first, on December 8, 1989, and second, on December 9, 1989. See Miss. Code Ann. § 41-29-115(A)(a)(4) (Supp. 1989). The two indictments were consolidated for trial with the accused's consent, and on February 27, 1990, the jury found Gibson guilty as charged on both counts. See Miss. Code Ann. § 41-29-139(a)(1) and (b)(1) (Supp. 1989). Gibson moved for judgment of acquittal notwithstanding the verdict or, in the alternative, for a new trial, on each conviction, and the Circuit Court denied these motions.
The Circuit Court then sentenced Gibson, upon his conviction on the December 8 sale, to twenty-five years imprisonment, with the last five years suspended, and to pay a fine of $20,000.00 plus costs. Upon Gibson's conviction on the December 9 sale, the Circuit Court sentenced him to twenty-five years imprisonment, with the last five years suspended, this sentence to be served concurrently with that imposed on the first charge. The Court again ordered Gibson to pay a $20,000.00 fine plus costs. In addition, the Court ordered that Gibson be transferred to the hospital at the Mississippi State Penitentiary at Parchman for evaluation of his own drug problem and for possible treatment and placement in the Department of Corrections' Drug and Alcohol Rehabilitation Program.
Gibson now appeals to this Court, challenging his convictions and sentences.

III.
Gibson first challenges the weight and the sufficiency of the evidence to undergird his convictions and sentences. When he does so, he encounters our rules regarding the scope of review, which ought to be as familiar as they are restrictive and need not be repeated here.
In the case of each sale, the prosecution presented the unequivocal testimony *741 of Dale Bell that on successive days he bought a small quantity of cocaine from Gibson and paid Gibson $20.00. Bell's own problems with the law, his instructions from law enforcement officials and the like, were thoroughly aired before the jury, and Gibson's counsel was given full opportunity for cross-examination. See Williams v. State, 463 So.2d 1064, 1069 (Miss. 1985). What Gibson cannot escape, of course, is that his sale of an illegal controlled substance to one such as Bell, or even to the most despicable degenerate in town, is no less an offense than if he had sold to an innocent youth and started his victim down the path he has taken.
The prosecution's case was corroborated by the testimony of Investigators Purnell and Anderson. Purnell testified that he listened to the sales as they were taking place via the hidden body microphone Bell was carrying on his person and that he had listened to the tape recordings prior to trial. Defense counsel's efforts to probe the point and to suggest that the recordings were of less than perfect quality elicited Investigator Purnell's assurances that the voice was Gibson's and that he could identify Gibson's voice because he had talked with him on a number of previous occasions. Investigator Anderson produced the tape recordings themselves, and these were played to the jury, without defense objection. Concededly these recordings are of less than perfect quality, as they were made under less than ideal conditions. Again, cross-examination elicited substantial identifications by Investigator Anderson of Gibson's voice and of comments by Gibson confirming that the cocaine was his and that he was, in fact, selling it to Bell. See Doby v. State, 557 So.2d 533, 541 (Miss. 1990); Middlebrook v. State, 555 So.2d 1009, 1011-13 (Miss. 1990).
Gibson testified in his own defense and conceded that he was a user and that he was an addict. He denied that he was a seller, and, specifically, he denied that he sold cocaine to Bell on either of the days in question. The jury heard all of this and simply wasn't buying. Given our scope of review, we may only hold that the evidence adduced at trial against Earnest Gibson was legally sufficient that we have no authority to set aside or disturb either conviction. Turner v. State, 573 So.2d 1335, 1337 (Miss. 1990); Williams v. State, 463 So.2d at 1068; Sparks v. State, 412 So.2d 754, 756 (Miss. 1982).
By the same token, the two guilty verdicts were in no way against the weight of the evidence. The Circuit Court acted well within its discretion when it overruled Gibson's motion for a new trial. Lane v. State, 562 So.2d 1235, 1236-37 (Miss. 1990); May v. State, 460 So.2d 778, 781 (Miss. 1984).

IV.
Gibson argues that the Circuit Court erred when it allowed the prosecution to offer photographs of the cocaine. We might add that each photograph shows a very small clear substance which is indicated by marking. It is true Gibson objected at trial and re-raises the point on appeal, but we are less than clear of his grounds.
The record indicates that the substances were entirely consumed in the Crime Lab's chemical analysis. Nothing before us suggests, however, that Gibson made any independent request for a sample or portion of the substances so that he might obtain an independent chemical analysis, and he is certainly not in a position to complain on this ground. See Weaver v. State, 497 So.2d 1085, 1093 (Miss. 1986); Love v. State, 441 So.2d 1353, 1356 (Miss. 1983). We have held that due process is not offended when one is prosecuted for a drug violation and where, in order to perform the necessary chemical analysis, the prosecution reasonably consumed the entire illegal substance. See Jones v. State, 523 So.2d 957, 958-59 (Miss. 1988); Hampton v. State, 498 So.2d 384, 386 (Miss. 1986); Poole v. State, 291 So.2d 723, 726 (Miss. 1974).
Gibson complains that the photographs are not the best evidence. That may well be true, but they are certainly admissible evidence. The prosecution properly qualified the photographs as depicting the substances Bell purchased from Gibson. *742 There is no suggestion or inference in the record that the original substances were destroyed in bad faith; indeed, the precise contrary appears. We find no error in the court's allowing the photographs to be presented to the jury.

V.
We comment on one additional matter. The record before us includes substantial matters with respect to which no issue has been raised on appeal. Because the accused qualified as an indigent, this has resulted in unnecessary expense to the county, although the amount is not enormous.
The point requires explication. We have repeatedly urged our circuit courts and court reporters to assure that every word spoken during the course of the trial proceedings be preserved in such a way that it may be included in the record on appeal. See Lambert v. State, 574 So.2d 573, 577 (Miss. 1990); Winters v. State, 473 So.2d 452, 457-58 (Miss. 1985); Dorrough v. State, 437 So.2d 35, 37 (Miss. 1983). The common areas of concern have been voir dire examination of the prospective jurors, arguments of counsel, and chambers and bench conferences. Lambert, 574 So.2d at 577-78; Doby v. State, 557 So.2d at 536 n. 2. We are pleased to note that, for the most part, the reporter did preserve all of these features of today's trial. The problem is that the record includes these voir dire examination of jurors and opening and closing statements of counsel. None of these, however, was specifically designated by defense counsel as parts of the appellate record. See Rule 10(b)(1), Miss.Sup.Ct. Rules. There is not before us today the remotest suggestion that any error occurred in those aspects of the trial, and we perceive no reason why they should have been transcribed and made a part of the record. We do not understand why the reporter would include in the record matters not designated.
We need be clear of what we are saying, particularly as it regards the role of appellate counsel. We realize that the designation of record is made before counsel reviews the transcript. We accept as the common experience of every trial lawyer, unsuccessful before a jury, that he or she often will remember and regard as error trial occurrences which, upon cool reflection and examination of the printed transcript, appear dubious grounds for appeal. We intend here no criticism of defense counsel who, in good faith, asks that a portion of the proceedings be included in the transcript and then, in the exercise of professional judgment, decides at the briefing stage that a particular issue has less merit than had been thought in the heat of battle. On the other hand, where counsel, without any apparent reason or justification, has the entire transcript prepared, including portions not remotely related to any issue tendered on appeal, we regard with some concern the infliction of the cost thereof upon the county. The day may come when, in a proper case and after fair process, we impose sanctions upon counsel for unnecessarily burdening the record.
A touch of the old problem remains. In reviewing the present transcript, we were subconsciously complimenting the court reporter for complying with our prior injunctions and preserving notes of practically everything, until we reached the point where defense counsel asked to approach the bench, at which point the transcript reflects:
(Counsel did approach the bench out of the hearing of the court reporter.)
This is precisely what we have striven so hard to stop. Lambert v. State, 574 So.2d at 577-78. For aught that appears, nothing occurred at this bench conference that raised any problem. Neither the Circuit Court nor the court reporter had any way of knowing that fact at the time. We repeat, and will no doubt have to repeat again, that the court reporter should preserve every word spoken during the course of the trial process and have that available for transcription in the event of an appeal and a good faith designation by counsel.
CONVICTION OF SALE OF COCAINE IN CIRCUIT COURT NO. 10111 AND SENTENCE OF 25 YEARS IMPRISONMENT, WITH 5 YEARS SUSPENDED TO *743 BE SERVED ON PROBATION, AND FINE OF $20,000.00 PLUS COURT COSTS AFFIRMED; CONVICTION OF SALE OF COCAINE IN CIRCUIT COURT NO. 10112 AND SENTENCE OF 25 YEARS IMPRISONMENT, WITH 5 YEARS SUSPENDED TO BE SERVED ON PROBATION, SENTENCE TO BE SERVED CONCURRENTLY WITH SENTENCE IMPOSED IN NO. 10111, AND FINE OF $20,000.00 PLUS COURT COSTS, AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.