# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 98-KA-00769-COA

**FRANCO COLEMAN**                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/12/1998 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | KEN TURNER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | 05/12/1998: CT I SALE OF LESS THAN ONE OUNCE OF MARIJUANA SENTENCED TO 2 YRS IN THE MDOC TO RUN CONSECUTIVELY TO CT II; CT II SALE OF LESS THAN ONE OUNCE OF MARIJUANA WITHIN 1,500 FEET OF A PUBLIC PARK SENTENCED TO 6 YRS IN THE MDOC FOR A TOTAL OF 8 YRS & PAY A FINE OF $3,000 |
| DISPOSITION: | AFFIRMED - 07/27/1999 |
| MOTION FOR REHEARING FILED: | 08/24/99; denied 11/09/99 |
| CERTIORARI FILED: | 11/22/99; granted 01/27/2000 |
| MANDATE ISSUED: | |

BEFORE KING, P.J., BRIDGES, AND LEE, JJ.

LEE, J., FOR THE COURT:

¶1. Franco Coleman was tried and found guilty in the Circuit Court of Leake County. Coleman was found guilty on count one for the sale of less than one ounce of marijuana on July 6, 1997, in violation of Miss. Code Ann. § 41-29-139(b)(3) (Rev. 1993) and count two for the sale of marijuana within fifteen hundred feet of a public park on August 6, 1997, in violation of Miss. Code Ann. § 41-29-139(b)(3) and Miss. Code Ann. § 41-29-142(1). It is from these convictions that Coleman brings this appeal and presents the

following issues for this Court's consideration: (1) whether the sentence of the court relative to count two exceeded the maximum period of confinement authorized by law, and (2) whether the court erred in failing to conduct a competency hearing and make a competency determination.

## FACTS

¶2. In the summer of 1997, there was a undercover operation being carried out by the Mississippi Bureau of Narcotics in conjunction with the Carthage Police Department to stop the sale of illegal drugs within Leake County. On July 29, 1997, Agent Marshall Pack, an agent with the Mississippi Bureau of Narcotics, testified that he was working undercover and made the acquaintance of Coleman while he and the confidential informant were at Town Creek Apartments. Agent Pack further testified that on this date he purchased a quarter ounce of marijuana for the sum of fifty dollars from Coleman. It was not until August 6, 1997, that Agent Pack had another opportunity to purchase marijuana from Coleman.

¶3. On August 6, 1997, Agent Pack was conducting a second undercover investigation. On this date Agent Pack was traveling within the Leake County area in a automobile driven by the confidential informant. During this investigation Agent Pack and the confidential informant had an opportunity to talk with a third party from whom Agent Pack had previously purchased drugs. This individual informed Agent Pack and the informant that he did not have any drugs to sell, but that he knew an individual that did have drugs available to purchase. The individual proceeded to enter the automobile on the passenger side of the backseat and traveled with Agent Pack and the informant.

¶4. Agent Pack, the confidential informant, and the third party all went to Canton Manor, but no one could be found, and they drove to Lincoln Park. Agent Pack further testified that the informant drove the automobile within Lincoln Park. Agent Pack noticed a green Cadillac which belonged to Coleman. The third-party then said, "There he is right there." He instructed the confidential informant to "pull up beside that car right there." The informant followed the individual's instructions and pulled the car beside the green Cadillac. Coleman exited his vehicle and approached the undercover vehicle on the passenger side where Agent Pack was located and inquired as to what they wanted. Agent Pack told Coleman that he wanted to spend fifty dollars. Coleman went back to his automobile and got two bags of marijuana and went back to the undercover automobile to talk with Agent Pack. Coleman conveyed the two bags of marijuana to Agent Pack and allowed him to choose the bag he wished to purchase. Agent Pack made a choice and paid Coleman the sum of sixty dollars for the marijuana from which Agent Pack received ten dollars in change. Subsequently, Coleman was arrested and charged for both sales of marijuana.

## I. WHETHER THE SENTENCE OF THE COURT ON COUNT TWO EXCEEDED THE MAXIMUM PERIOD OF CONFINEMENT AUTHORIZED BY LAW.

¶5. The first assignment of error raised by Coleman is the trial court erred in the sentence imposed for the sale of marijuana under count two. In particular, Coleman argues that the trial judge erred when he sentenced him to serve six years confinement and to pay a fine of $3,000 after having been found guilty under count two for the sale of marijuana within 1500 feet of Lincoln Park. The trial court relied on Miss. Code Ann. § 41-29-142 (2) (Rev. 1993) to enhance the sentence of Coleman, because under count two he was convicted for the sale of marijuana within 1500 feet of a public park. Coleman argues the following in his brief: "§ 41-29-142, Miss. Code of 1972 authorizes doubling the maximum penalty if the sale takes place within 1500 feet of a building or outbuilding constituting all or part of a public park i. a. or within 1000 feet of a public park i. a. Because the indictment in the case before the [c]ourt did not mention a building or

outbuilding, but only charged (Coleman) with the sale of marijuana within 1500 feet of Lincoln Park, (Coleman) was given inadequate notice of the proposed elements of proof justifying enhancement."

¶6. Under Uniform Circuit and County Court Rule 7.06 which states in part the following:

> The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them.

¶7. This Court has reviewed the indictment and the pertinent portions of the indictment which are in issue in this case reads as follows:

> In the Circuit Court of said County at the January Term thereof, in the year of our Lord, 1998.
>
> The Grand Jurors of the State of Mississippi, taken from the body of the good and lawful persons of the County of Leake, duly elected, empaneled, sworn and charged, at the Term aforesaid of the Court aforesaid, to inquire in and for the body of the County aforesaid, in the name and by the authority of the State of Mississippi, upon their oaths present: That
>
> FRANCO COLEMAN
>
> late of the County aforesaid, in the County and State aforesaid, and within the jurisdiction of this Court, as part of a continuing series of acts connected together and constitution one with the other parts of a common design, scheme and plan,
>
> COUNT TWO
>
> did on or about the 6th day of August, 1997, did willfully, unlawfully, feloniously and knowingly sell and deliver to Marshall Pack for the sum of $50.00, a Schedule I controlled substance, namely marijuana, in an amount of less than one ounce, in Leake County, Mississippi, within fifteen hundred feet of the real property comprising Lincoln Park, a public park, contrary to and in violation of Section 41-29-139 (b)(3) and Section 41-29-142(1), Miss. Code Ann. (1972), . . . .

¶8. In *Williams v. State*, 445 So. 2d 798, 804 (Miss. 1984), the Mississippi Supreme Court upheld the principle that the fundamental purpose of an indictment is to furnish the individual accused of a crime with a sufficient description of the charges against him as will enable him to adequately prepare his defense. *See Westmoreland v. State*, 246 So. 2d 487, 489 (Miss. 1971); *Woods v. State*, 200 Miss. 527, 532-33, 27 So. 2d 895, 897 (1946). Therefore, all that is required in regard to notice is a concise and clear statement of the elements of the crime charged. *Love v. State*, 211 Miss. 606, 52 So. 2d 470, 472 (1951). The indictment is only required to charge the essential elements of the offense, permitting the accused to prepare a defense and protect the individual against double jeopardy. *United States v. Barksdale-Contreras*, 972 F. 2d 111, 113 (5th Cir. 1992). This Court must look at practical rather than technical considerations to govern the resolution of challenges to the sufficiency of an indictment and an appellate court will not reverse for minor deficiencies which do not prejudice the accused. *United States v. Green*, 964 F.2d 365, 372 (5th Cir.1992). The indictment in this case more than adequately alerted Coleman to the conduct being prosecuted.

¶9. After reviewing the aforementioned section in the indictment in the case at bar, it is evident that count two of the indictment gave Coleman sufficient notice that he was being charged under a statute which involved the sale of drugs in or on or within a public park and if found guilty would allow for an enhanced sentence. In *United States v. Varkonyi*, 645 F.2d 453, 456 (5th Cir.1981), the indictment was found to be sufficient notwithstanding failure to allege all elements of offense charged where the indictment referred to the particular statute an individual is being charged under. After reading the indictment it becomes evident that the statutes which Coleman was being charged for violating were contained within count two. The fact that the statutes were cited allowed Coleman the opportunity to review said statutes and prepare a defense.

¶10. In fact Coleman used the notice provided in the indictment and presented a defense through his father and his father's co-worker relative to his presence in Lincoln Park. Coleman's father and his father's fellow co-worker testified that on August 6, 1997, Coleman could not have been at Lincoln Park in a lime green Cadillac because they had used the vehicle to go to work and the vehicle was at the county barn at the time of the alleged drug transaction between Agent Pack and Coleman. Since Coleman presented this defense, this Court determines that Coleman has failed to show any prejudice relative to his argument that the indictment furnished inadequate notice of the charge against him. With this having been said, this Court acknowledges that there are two distinctly different circumstances listed in Miss. Code Ann. § 41-29-142 (1) (Rev. 1993) under which an individual may be found guilty and receive an enhanced sentence. Miss. Code Ann. § 41-29-142(1) reads as follows:

> Except as provided in subsection (f) of Section 41-29-139 or in subsection (2) of this section, any person who violates or conspires to violate Section 41-29-139(a)(1), Mississippi Code of 1972, by selling, bartering, transferring, manufacturing, distributing, dispensing or possessing with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance, in or on, or within one thousand five hundred (1,500) feet of, a building or outbuilding which is all or part of a public or private elementary, vocational or secondary school, or any church, public park, ballpark, public gymnasium, youth center or movie theater or within one thousand (1,000) feet of, the real property comprising such public or private elementary, vocational or secondary school, or any church, public park, ballpark, public gymnasium, youth center or movie theater shall upon conviction thereof, be punished by the term of imprisonment or a fine, or both, of that authorized by Section 41-29-139(b).

In addition to Coleman's contention relative to the insufficiency of the indictment he further asserts that the statute, requires proof of the presence of a building or an outbuilding for Coleman to have been found guilty under count two and received an enhanced sentence. Coleman argues that the State failed to meet its burden when it did not present evidence of the size or location of any buildings within Lincoln Park. This Court has carefully read the aforementioned text of § 41-29-142(1) and concludes that Coleman has accurately interpreted § 41-29-142(1); however, in the case at bar, it was harmless error that the State did not present evidence to the effect that a building or outbuilding was present within 1,500 feet of the location of the drug transaction between Coleman and Agent Pack.

¶11. Testimony given by Agent Pack established that the sale took place within Lincoln Park. The relevant portions of the testimony given by Agent Pack are as follows:

> ANSWER: So, he got in the backseat on the passenger side behind me of the undercover vehicle, and we proceeded to ride. We drove to Town Creek Apartments. We drove to Canton Manor. Still didn't see anybody. Then he told us to drive to Lincoln Park. So, we drove down to Lincoln Park,

and that's when he proceeded to come into the park. I saw Franco Coleman's green Cadillac, the Cadillac he was driving.

QUESTION: Lincoln Park, is that where you actually bought the marijuana?

ANSWER: Yes, sir.

QUESTION: From the Defendant?

ANSWER: Yes, sir.

Coleman has not asserted facts as to how the lack of the State presenting evidence relative to the location of buildings or outbuildings prejudiced his defense. Assertions of error by an appellant without the showing of how that error actually prejudiced the appellant does not trigger reversal. *Hatcher v. Fleeman*, 617 So. 2d 634, 639 (Miss. 1993). The Mississippi Supreme Court has acknowledged that even where error has occurred, an appellate court is not to reverse a conviction when the overwhelming weight of the evidence supports the guilty verdict. *Lentz v. State*, 604 So. 2d 243, 249 (Miss. 1992). In the case at bar, the aforementioned testimony presented by Agent Pack showed that the transaction occurred within the park; therefore, it became irrelevant whether Coleman was within 1,500 feet of a building or outbuilding, or 1,000 feet of the real property line. Therefore, this Court finds that any evidence relative to the presence of a building or outbuilding was not necessary, and the conviction of Coleman was not against the overwhelming weight of the evidence. We find no reversible error by the trial court in enhancing the sentence of Coleman.

## II. WHETHER THE COURT ERRED IN FAILING TO CONDUCT A COMPETENCY HEARING AND MAKE A COMPETENCY DETERMINATION.

¶12. Coleman argues as a second assignment of error that the trial court erred in failing to conduct a competency hearing and to make a competency determination relative to the ability of Coleman to assist his counsel in his defense. Coleman argues that Uniform County and Circuit Court Rule 9.06 requires a competency hearing and determination and without such a hearing there is reversible error. The State counters the argument presented by Coleman by contending that there was no request by Coleman for a hearing and there is a lack of evidence in the record to indicate that such a hearing should have been conducted by the trial judge *sua sponte*.

¶13. On March 3, 1998, counsel for Coleman filed a motion for psychiatric examination. On March 18, 1998, the trial judge, Honorable Marcus Gordon, ordered the Sheriff of Leake County, Mississippi to take custody of Coleman and transport him to the office of Dr. Mark C. Webb, a qualified psychiatrist of the State of Mississippi, for a psychiatric examination. The order further instructed that upon completion of the exam Dr. Webb was to make a written report of his findings to Judge Gordon, the district attorney, the circuit clerk, and counsel representing Coleman. The Court ordered the psychiatric examination for Mr. Coleman to take place on May 11, 1998. However, after reading the briefs presented by Coleman and the State and a review of the record it appears a hearing was not conducted prior to trial to make a final determination relative to the mental ability of Coleman to go forward with his trial and assist his counsel with a defense. The question now becomes whether it was the trial judge's unequivocal duty to conduct such a hearing to make a determination on the record relative to Coleman's ability to stand and assist counsel at trial.

¶14. On appeal, Coleman argues that he was denied his right to a competency hearing; however, he does

not state facts to support the contention that he was indeed incompetent to stand trial. Coleman acknowledges that a mental examination was ordered by the trial court; however, the record does not contain any reports from the examining physician relative to competency, nor is there an explanation as to why the report had not been made part of the record.

¶15. In support of the argument that a competency hearing is mandatory before the trial court proceeds with a trial, Coleman cites *Emanuel v. State*, 412 So. 2d 1187, 1189-90 (Miss. 1982 ), for the contention that the trial court must make its determination whether a defendant is capable of conducting a rational defense a matter of record. This statement alone does not accurately represent the procedure required and the discretion which is given to the trial judge when making a competency determination prior to trial.

¶16. In *Emanuel v. State*, the court started with the basic premise that "the trial of a defendant, when his mind is so clouded that he cannot remember and intelligently relate what occurred at the time of the commission of the alleged offense, is a denial of due process and contrary to public policy, and when it appears to the trial court that there is a probability that defendant is incapable of making a rational defense, the trial should not proceed until the defendant's mental condition has been investigated and it appears that he is sufficiently rational to make a defense." *Id*. at 1188 (citations omitted). When the defendant in a case has raised competency to stand trial, the trial court should preliminarily, prior to trial, conduct a hearing to determine whether there is a probability that defendant is incapable of making a rational defense. *Id*. The burden is upon the defendant to go forward with the evidence to show his probable incapacity to make a rational defense. *Id*.

¶17. Miss. Code Ann. § 99-13-11 (Rev. 1994) governs the procedures which may be followed in ordering a mental examination to determine if an individual is competent to stand trial and states as follows:

> In any criminal action in the circuit court in which the mental condition of a person indicted for a felony is in question, the court or judge in vacation on motion duly made by the defendant, the district attorney or on the motion of the court or judge, may order such person to submit to a mental examination by a competent psychiatrist or psychologist selected by the court to determine his ability to make a defense; provided however, any cost or expense in connection with such mental examination shall be paid by the county in which such criminal action is pending.

¶18. This issue has been previously addressed by the Mississippi Supreme Court. In *Richardson v. State*, 722 So. 2d 481, 485 (Miss. 1998), the appellant, Richardson, contended the trial court erred when it denied him a hearing relative to his mental competency prior to his trial. In particular, Richardson maintained that there were two medical reports before the trial court--Dr. McMichael and Dr. Hearne's mental evaluation results--which raised "serious competency concerns." *Id*. Richardson admitted that he did not request a competency hearing at or before trial; however, Richardson argued the trial court should have ordered a competency hearing *sua sponte*. *Id*.

¶19. The State countered the argument presented by Richardson by asserting that no competency hearing was necessary because Richardson had already been evaluated by competent psychologists and found able to assist in his defense and to understand the nature of the proceedings against him. *Id*.

¶20. Rule 9.06 of the Uniform Circuit and County Court Rules, formerly Rule 4.08 (1) of the Uniform Criminal Rules of Circuit Court Practice, provides in pertinent part that:

If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court in accordance with § 99-13-11 of the Mississippi Code Annotated of 1972.

After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial . . . .

¶21. In *Richardson*, the supreme court followed the precedent established in *Conner v. State*, 632 So. 2d 1239 (Miss. 1993) (*overruled on other grounds),* relative to the issue of whether a trial court commits reversible error in failing to conduct a competency hearing *sua sponte* following a mental examination. In *Conner v. State*, 632 So. 2d 1239 (Miss. 1993), similar to the actions of Richardson, Conner had not requested a competency hearing at or before trial. Conner argued on appeal that the trial court should have ordered a hearing *sua sponte*. The State rebutted this argument by asserting that since Conner had failed to request the hearing his claim was procedurally barred. The Mississippi Supreme Court rejected this argument and cited then Rule 4.08(1), along with *Pate v. Robinson*, 383 U.S. 375, 384 (1966) (holding that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial."), and *Gothard v. State*, 452 So. 2d 889, 893 (Ala.Crim.App.1984) ("Even where the issue of competency to stand trial has not been raised by defense counsel, the trial judge has an ongoing and continuing responsibility to prevent the trial of an accused unable to assist in his defense."). *Conner*, 632 So.2d at 1248. The Mississippi Supreme Court noted the critical question was whether "reasonable grounds" existed to believe that Conner was insane, and if so, under Rule 4.08 a competency hearing was required. *Id*.

¶22. This Court notes that even though the *Richardson* court decides the competency issue under Uniform Circuit and County Court Rule 9.06 instead of then Uniform Criminal Rules of Circuit Court Practice Rule 4.08 the court continues to recognize and apply the "reasonable grounds" test used in *Conner* to determine when a trial court is required to hold a competency hearing *sua sponte*. *Richardson*, 722 So. 2d at 486. (*See also Conner v. State*, 632 So. 2d at 1248). "The determination of what is 'reasonable' rests largely within the discretion of the trial judge because the judge sees the evidence first hand and observes the demeanor and behavior of the defendant." *Id*. (*See also Conner*, 632 So. 2d at 1248). The Fifth Circuit Court of Appeals suggested the following test for reviewing a decision to forego a competency hearing:

[D]id the trial judge receive information which, objectively considered, should reasonably have raised a doubt about the defendant's competence and alerted him to the possibility that the defendant could neither understand the proceedings, appreciate their significance, nor rationally aid his attorney in his defense?

*Lokos v. Capps*, 625 F.2d 1258, 1261 (5th Cir.1980).

The United States Supreme Court instructed that "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required . . . ." *Drope v. Missouri*, 420 U.S. 162, 180 (1975).

¶23. In *Conner*, the trial court was aware that Conner was taking medication for schizophrenia, made a suicide gesture, allegedly "heard voices," had a low average intellectual level, that his counsel complained

about getting assistance for trial from the defendant, and that he recalled virtually no facts concerning the facts of the case. This court still concluded the trial court objectively considered all the facts and circumstances which bore upon Conner's competence to stand trial. *Conner*, 632 So. 2d at 1251. This court further held there was nothing in the record which led to the conclusion that Conner "could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense." *Id*. Thus, there was no error in not ordering a competency hearing. The court in *Richardson*, relied on the conclusion of the court in *Conner* and determined that the failure to hold a competency hearing was not error since the psychologist indicated Richardson knew right from wrong, could communicate with his counsel, and could rationally assist in his defense, notwithstanding the fact that 99% of the population might do it better. *Richardson,* 722 So. 2d at 486-87. The court further noted that there was no evidence in the record that established Richardson suffered from irrational behavior or incompetence to a degree that would have resulted in him not receiving a fair and just trial. *Id*. at 487.

¶24. The case at bar is very similar to *Richardson* and *Conner*, due to the fact that Coleman decided to forego requesting a competency hearing prior to trial, and that there is nothing in the record which leads to the conclusion that Coleman could not understand the proceedings, appreciate their significance or rationally aid his attorney in his defense. In fact, while this Court acknowledges that in certain instances there are facts which will require a trial court on its own initiative to hold a competency hearing, the facts in the case at bar do not allow us to conclude that the trial court abused its discretion. This Court does not have the benefit of the medical opinions held by the psychiatrist after the doctor's examination of Coleman. It is the defendant's responsibility to make a complete record for the appeal court to review. "Our law is clear that an appellant must present to us a record sufficient to show the occurrence of the error he asserts and also that the matter was properly presented to the trial court and timely preserved." *Lambert v. State*, 574 So. 2d 573, 577 (Miss. 1990) (citations omitted).

¶25. In the case at bar, Coleman has failed to assert that he was in fact unable to stand trial or assist his counsel with a defense due to any mental incapacity. Additionally, Coleman has failed to make the findings of the psychiatrist which examined Coleman part of the appellate record for the review of this Court and, furthermore, the trial judge was present to observe the demeanor of Coleman. This Court is not at liberty to make assumptions when the evidence is not in the record; therefore, it cannot be said that the trial court was unreasonable in not holding a competency hearing prior to the trial. We find this assignment of error is without merit.

¶26. THE JUDGMENT OF THE CIRCUIT COURT OF LEAKE COUNTY OF CONVICTION ON COUNT I OF THE SALE OF A SCHEDULE I CONTROLLED SUBSTANCE AND SENTENCE OF TWO YEARS; COUNT II OF CONVICTION OF THE SALE OF A SCHEDULE I CONTROLLED SUBSTANCE WITHIN 1,500 FEET OF A PUBLIC PARK AND SENTENCE TO SIX YEARS ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH SENTENCE IN COUNT I TO BE SERVED CONSECUTIVELY TO SENTENCE IN COUNT II, AND PAY A FINE OF $3,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEAKE COUNTY.


KING, P.J., BRIDGES, PAYNE, AND THOMAS, JJ., CONCUR. McMILLIN, C.J.,

**CONCURS IN PART AND DISSENTS IN PART WITH SEPERATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J., DIAZ AND IRVING, JJ. MOORE, J., NOT PARTICIPATING.**

McMILLIN, C.J., CONCURRING IN PART, DISSENTING IN PART:

¶27. I concur in all aspects of the majority's opinion except that portion of the opinion affirming Coleman's enhanced punishment under Count Two pursuant to Section 41-29-142(1). The State, in seeking to invoke the stricter penalties of Section 41-29-142(1), alleged in the indictment that the marijuana sale occurred "within fifteen hundred feet of the real property comprising Lincoln Park . . . ."

¶28. Unfortunately for the State's position, this allegation, even if proven beyond reasonable doubt, did not bring the crime within the provisions of the statute. Section 41-29-142(1) requires that the sale occur "in or on, . . . or within one thousand (1,000) feet of, the real property comprising [a] . . . public park . . . ." Miss. Code Ann. § 41-29-142(1) (Rev. 1993). The indictment, apparently picking up on other language in the statute setting the prohibited distance at 1,500 feet from certain buildings - a matter that is not relevant to this case - has failed to charge a violation of this statute. Measuring from the boundaries of the real property constituting a public park, the proscribed distance is one thousand feet and not the fifteen hundred feet alleged in the indictment.

¶29. I further disagree with the proposition that the defect was remedied by proof that the sale actually occurred within the park. "[A] substantive defect in an indictment cannot be cured by extrinsic proof . . . ." *Copeland v. State,* 423 So. 2d 1333, 1336 (Miss. 1982). It is my view that an allegation that the sale occurred within the area prohibited by the statute is substantive insofar as the State seeks to use that fact to double the penalty otherwise assessed for a drug sale. Were the law to be otherwise, the State would not even need to charge a violation of Section 41-29-142(1) in the indictment to seek double punishment, but would simply need to prove that fact at trial.

¶30. Concluding that the indictment was fatally flawed insofar as it sought to charge an offense that exposed Coleman to double punishment, I would reverse the enhanced sentencing for the conviction under Count Two of the indictment and remand for proper sentencing under Section 41-29-139(b)(3).

**SOUTHWICK, P.J., DIAZ AND IRVING, JJ., JOIN THIS SEPARATE WRITTEN OPINION.**