**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2003-KA-02139-SCT**

*JOHN L. JOHNSON a/k/a JOHNNY L. JOHNSON*

**v.**

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/12/2003 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | WAYNE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | LESLIE D. ROUSELL |
| | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: |
| | JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | E. J. (BILBO) MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 6/16/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., EASLEY AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     John L. Johnson was convicted of the sale of cocaine within fifteen hundred feet of a church, in violation of Miss. Code Ann. §§ 41-29-139[1] and 41-29-142.[2]     The trial judge

---

[1] Miss. Code Ann. § 41-29-139(a) states in part, "it is unlawful for any person knowingly or intentionally: (1) To sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense, a controlled substance." Cocaine is a Schedule II substance under Miss. Code Ann. § 41-29-115.

[2] Miss. Code Ann. § 41-29-142 states in part, "any person who violates or conspires to violate Section 41-29-139(a)(1), Mississippi Code of 1972 . . . in or on, or within one thousand five hundred (1,500) feet of, a building or outbuilding which is all or part of . . . any church . . . shall, upon conviction thereof, be punished by the term of imprisonment or a fine, or both, of that authorized by Section 41-29-139(b) and, in the discretion of the court,

sentenced Johnson to a term of thirty years imprisonment in the custody of the Mississippi Department of Corrections without early release. Johnson timely appealed and charges the trial court with numerous errors.

**FACTS AND PROCEDURAL HISTORY**

¶2.     On June 14, 2002, officers Michael Tolbert and Tony Holifield of the South Mississippi Narcotics Task Force conducted an undercover drug buy with the aid of a paid informant, Steve Brown.   Officer Tolbert monitored the transaction by surveillance equipment while Holifield and Brown purchased the cocaine.   Holifield and Brown arrived at a trailer park in Wayne County at approximately 9:14 p.m., purchased one rock of crack cocaine from Jeffrey Miller and another from Johnson, left that location at approximately 9:18 p.m., and met up with officers Tolbert and Overstreet for a post-buy meeting where Tolbert took possession of the drugs and weighed them.   Johnson was later arrested and indicted by a grand jury for the illegal sale of cocaine within fifteen hundred (1,500) feet of the Saint Mary Holy Church of God in Christ.   Five or six days after the sale, Officer Holifield identified Johnson as one of the individuals from whom he purchased drugs after being shown a single photograph of Johnson by Officer Tolbert.[3]

¶3.     Johnson's trial in the Circuit Court of Wayne County began on July 9, 2003.   At trial, the State introduced testimony of Tolbert, Holifield, and Brandi Goodman, who worked for the

---

may be punished by a term of imprisonment or a fine, or both, of up to twice that authorized by Section 41-29-139(b).

[3] The photograph used for pretrial identification was a booking photo of Johnson taken on the night of his arrest for the instant crime.  At trial, this same photo was admitted into evidence.

Mississippi Crime Lab. Tolbert and Holifield provided conflicting testimony as to the amount of money used in the drug buy and as to the value of the drugs purchased. Tolbert testified that he gave Holifield $40 total to purchase drugs and that Holifield purchased a $20 rock of crack cocaine from both Miller and Johnson. Holifield, however, testified that Tolbert gave him $60 to purchase drugs and that he bought a $40 rock from Miller and a $20 rock from Johnson. There was also conflicting testimony as to the weight of the drugs purchased. Tolbert testified that the weight of the cocaine purchased from Johnson was approximately 0.6 grams. Brandi Goodman testified that the drugs she weighed at the state's crime lab, which were purportedly purchased from Johnson, weighed only 0.22 grams.

¶4. After the State rested its case-in-chief, Johnson made a motion for a directed verdict, which the court denied. Johnson then rested without offering any additional evidence. The jury returned a unanimous guilty verdict on July 10, 2003. A sentencing hearing was held on September 12, 2003, and the judge sentenced Johnson to thirty years without early release, pursuant to Miss. Code Ann. § 99-19-81, assessed him $250 in court costs, and assessed a crime lab fee of $300. Johnson timely filed a motion for a judgment of acquittal notwithstanding the verdict (J.N.O.V.) or, in the alternative, a new trial, which was denied.

¶5. Johnson raises five (5) issues on appeal[4], alleging that: (1) The trial court committed reversible error by failing to grant his motion for a directed verdict. Further, the weight of all of the evidence at the trial of this matter cannot sustain a conviction of guilty of sale of cocaine within 1500 feet of a church. The state failed to prove identification as well as within

_____

[4] The issues raised by Johnson are quoted verbatim from his appellate brief, so as to frame his arguments in his own words.

1500 feet of a church beyond a reasonable doubt; (2) Although the defendant did not object to the chain of custody and the subsequent admission into evidence of the alleged crack cocaine in this case, the court should not have allowed the State of Mississippi to introduce it into evidence; (3) The trial court committed error by sentencing the defendant to thirty years without parole as doing so was tantamount to giving the defendant a life sentence; (4) The court committed reversible error by refusing to grant defendant's proposed jury instruction D-2; and (5) Whether the above described errors when viewed cumulatively rise to the level of preventing Mr. Johnson from receiving a constitutionally fair trial. Finding no error, we affirm Johnson's conviction and sentence.

## DISCUSSION

### I.    Sufficiency and Weight of the Evidence.

¶6.    Johnson's attack of the trial court's denial of a directed verdict breaks down into two arguments: (1) that the evidence put on by the State was insufficient to overcome a motion for a directed verdict, let alone to support a jury verdict of guilty, and (2) that Officer Holifield's pre-court identification of him, based on a single photograph, was unnecessarily suggestive, as was admission of that photo at trial,  and amounted to a denial of his fourteenth amendment due process rights.  This claim of a due process violation raises an independent issue which we will address separately in Section II below.

¶7.    This Court reviews an appeal of an overruled motion for a directed verdict or j.n.o.v. as a matter of law, with the legal sufficiency of the evidence being viewed in a light most favorable to the State.  *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993).  Essentially, all credible evidence supporting a defendant's guilt should be accepted as true, and all favorable

4

inferences drawn from the evidence must be reconciled in the prosecution's favor. *Id*. This Court will only overturn a trial court's denial of a motion for a directed verdict or j.n.o.v. if, after considering all of the evidence, "reasonable and fair-minded jurors could only find the accused not guilty." *Id*.

¶8. Johnson attacks his conviction, in part, based on discrepancies in the weight of the cocaine, arguing that this evidence was not credible. He argues that the difference in weight of the cocaine, as measured by the task force officers, and the weight of the cocaine tested by Brandi Goodman at the Mississippi Crime Lab cannot support the conclusion, beyond a reasonable doubt, that the cocaine introduced against him in court is the same substance that the officers supposedly purchased from him on June 14, 2002. Johnson also argues that the State introduced insufficient evidence to prove that the alleged sale took place within 1,500 feet of a church. He noted that Officer Tolbert had not actually measured the distance from the church to the location of the drug buy and, furthermore, that the State introduced no evidence that the church housed an active congregation.

¶9. The State rebutted Johnson by introducing testimony of the officers who conducted the drug buy and a surveillance recording of the sale itself. Officer Holifield made a positive identification of Mr. Johnson as the person from whom he purchased cocaine. In response to Johnson's charge that the State hadn't proven the distance of the alleged sale from the church, Officer Tolbert admitted that he did not make an actual measurement of the distance; however, he approximated the distance as roughly thirty (30) yards and testified that he drove from the spot of the sale to the church and that the distance was too short to even register one tenth of

5

a mile on the odometer of his vehicle. Brandi Goodman also testified that the substance purchased by the undercover agent was in fact crack cocaine.

¶10. Viewing the evidence introduced at trial in a light most favorable to the State and the guilty verdict, there is sufficient evidence to overcome Johnson's motions for a directed verdict and j.n.o.v. Issues concerning the weight and credibility of evidence are to be determined by a jury, ***Harveston v. State***, 493 So. 2d 365, 370 (Miss. 1986), and this Court is not allowed to "pass upon the credibility of witnesses and, where the evidence justifies a verdict, it must be accepted as having been found worthy of belief." ***Davis v. State***, 568 So. 2d 277, 281 (Miss. 1990). Any conflicts in the evidence introduced at trial were resolved by the jury and such evidence was not so deficient that "reasonable fair-minded men in the exercise of impartial judgment" could not conclude that Johnson was guilty beyond a reasonable doubt. ***May v. State***, 460 So. 2d 778, 781 (Miss. 1984). As such, we find that the trial court did not err in denying Johnson's motions.

¶11. At trial, Johnson, in addition to his motion for a j.n.o.v., made an alternative motion for a new trial which the judge denied. Though Johnson does not explicitly state that he is appealing the denial of his motion for a new trial, he does make a claim that his conviction is contrary to the weight of the evidence introduced at trial. This Court's standard for reviewing the trial court's denial of a motion for a new trial is abuse of discretion. A new trial should only be awarded if "the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." ***Esparaza v. State***, 595 So. 2d 418, 426 (Miss. 1992).

6

¶12. To support its case, the State introduced a tape recording of the sale where Johnson's fellow drug dealer referred to him as Johnny. Officer Holifield, the officer who conducted the undercover drug buy, testified that Johnson was the individual he purchased drugs from and made an in-court identification of Johnson. The State also introduced evidence from the state's crime lab which indicated that the substance Johnson sold was in fact crack cocaine. Johnson's defense was based primarily on an argument that the cocaine introduced into evidence was not the same piece of cocaine which the officers supposedly bought from him. He also alleges misidentification by the officers working the case, yet Johnson never offered an alibi or any hard evidence that pointed away from his guilt. After looking at the weight of the evidence supporting a guilty verdict versus the weight of the evidence supporting an acquittal, allowing Johnson's conviction to stand would not sanction unconscionable injustice. Therefore, we find that the trial court did not abuse its discretion in refusing to grant Johnson a new trial.

## II.    Pretrial Identification and Booking Photo.

¶13. Johnson also attacks the pre-court identification procedure used by the officers in this case, alleging that the suggestive nature of the procedure constituted a denial of his fourteenth amendment right to due process of law. He charges that this error was compounded by the trial court's decision to allow the photograph used for identification purposes to be admitted into evidence. Johnson cites *Stovall v. Denno*, 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967), for the proposition that this Court must look at "the totality of the circumstances" to determine whether the conduct of a confrontation, either pre-trial or in-court, violates a defendant's due process rights. In *Stovall*, the U.S. Supreme Court affirmed the defendant's

7

guilty verdict and found that his due process rights were not violated by the identification procedures where the defendant was taken by armed officers to a hospital for identification by the victim, the victim and officers testified as to the identification in the hospital room, and the victim made an in-court identification of the defendant. *Stovall*, 388 U.S. at 295-96.

¶14. In *Neil v. Biggers*, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972), the U.S. Supreme Court articulated five factors for determining the reliability of an identification procedure where the confrontation was suggestive. These factors, which are evaluated to determine the likelihood of misidentification under a "totality of the circumstances," are:

> [1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199-200. This Court has applied these factors in analyzing identification procedures in subsequent cases. See *Ellis v. State*, 667 So. 2d 599, 605 (Miss. 1995); *Miller v. State*, 399 So. 2d 1338, 1341 (Miss. 1981).

¶15. Applying the *Biggers* factors to the instant case, looking at the totality of circumstances, there is little likelihood of misidentification. First, Officer Holifield had ample opportunity to view Johnson; he testified that he stood face to face from Johnson at a distance of a few feet, was in his presence for approximately two to three minutes, and held a conversation with him.

¶16. Second, Officer Holifield's degree of attention can be considered to be at a high level because he did not view Johnson in passing or from a great distance; rather, he conducted the drug purchase with Johnson up close and over a period of three to four minutes. Additionally,

8

Holifield testified that he was trained to notice distinguishing marks such as facial features, tattoos, and scars for identification purposes. These facts indicate that Officer Holifield held a high degree of attention both when he first met Johnson and later on when he identified him as the party from whom he bought drugs.

¶17. Third, the record reflects that Holifield's prior description was accurate. Holifield testified that the other drug dealer, Jeffrey Miller, referred to Johnson by name as "Johnny." He also testified that as he was leaving the purchase site, he verbally transmitted a description of Johnson to Officer Tolbert indicating height and weight and the fact that he had braids in his hair.

¶18. Fourth, Officer Holifield exhibited a high degree of certainty regarding his identification of Johnson, testifying that he was 100% sure that the person in the picture he was shown was the perpetrator. This was bolstered by his positive in-court identification of Johnson and his statement that his identification of Johnson would not change, even if he were shown numerous photographs of other potential suspects.

¶19. Fifth, there was not a long time period between the date of the drug sale and the date that Holifield identified Johnson as the seller of the drugs he purchased. Officer Holifield testified that he was shown the photograph of Johnson about five days after the drug deal. This was corroborated by Officer Tolbert, who estimated that he showed Holifield Johnson's photograph roughly six days after the drug deal. After applying the *Biggers* factors to the instant case, we find that any suggestiveness in the identification procedures used here does not constitute error, as there was little likelihood of misidentification under the circumstances.

9

¶20.    Johnson also argues that his due process rights were violated by the trial court's admission of the booking photo from his arrest.    He claims the "mug shot" was highly prejudicial and suggestive of prior criminal acts due to identifying marks on the photo. Johnson argues for reversal based on this Court's ruling from *Sloane v. State*, 437 So. 2d 16 (Miss. 1983).    In *Sloane*, we reversed a criminal conviction for armed robbery based on the improper introduction of a "mug shot" into evidence at trial. *Sloane*, 437 So. 2d at 18-19.   In reaching that decision, we articulated three conditions that must be established to prevent the introduction of "mug-shot type photographs" from constituting error:

> (1) The Government must have a demonstrable need to introduce the photographs; and (2) The photographs themselves, if shown to the jury, must not imply that the defendant had a prior criminal record; and (3) The manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs.

*Id*. at 18 (citing *United States v. Harrington*, 490 F.2d 487, 494 (2d Cir. 1973)).

¶21.    The factual situation here differs materially from that in *Sloane*.   In *Sloane*, this Court determined that the State had offered no reason for introducing the questionable photograph, as the witness made a positive in-court identification of the defendant.    *Id*. The admission of the photo was particularly deficient in the fact that the photograph introduced at trial was of a much younger defendant and it contained booking information indicating prior criminal activity.   *Id*.   Additionally, the questioning of the State's witness indicated that the photographs used for identification were old file photos, which highlighted the fact that the defendant was previously suspected of criminal activities. *Id*.

10

¶22. The photograph introduced in this case is the booking photo from Johnson's arrest for the crime charged here, as opposed to a file photo of an earlier crime, as in *Sloane*. The photo was first produced at trial by Officer Tolbert and the State introduced it as an exhibit for identification purposes only. Officer Holifield later testified that the exhibit he was shown in court was the same photo upon which he based his previous identification of Johnson. The State then sought to have the photo admitted into evidence. Defense counsel objected, and the judge conferred with counsel, outside the jury's presence, to consider admission of the photo. Prior to admitting the photograph, the judge made a specific finding, stating:

> The photograph is a color photo of the defendant taken in a regular shirt with a concrete wall background. There are no indications where this picture was taken from to indicate anything about prior arrest, or anything like that.

Further, the judge redacted a number that appeared below Johnson's name on the photograph. While the State offered no specific reason for the photo's introduction into evidence, after previously being introduced for identification purposes, the record does not establish that the photograph was prejudicial or suggestive of other crimes. As such, we find that Johnson's due process challenge on this ground is also without merit.

### III. Admission of the Crack Cocaine into Evidence.

¶23. At trial, Johnson failed to object either to the chain of custody or to the admission of the cocaine introduced into evidence, yet he asks this Court to address the propriety of the judge's admission of the cocaine for the first time on appeal. This Court normally reviews a judge's decision to admit or exclude evidence for an abuse of discretion. *Graves v. State*, 492 So. 2d 562, 565 (Miss. 1986). However, a defendant's failure to make a contemporaneous objection to the introduction of evidence at trial waives review of the matter on appeal.

11

*Lambert v. State*, 574 So. 2d 573, 575 (Miss. 1990). As such, an appellant "must rely on plain error to raise the assignment on appeal." *Foster v. State*, 639 So. 2d 1263, 1289 (Miss. 1994) (citing *Gray v. State*, 487 So. 2d 1304, 1312 (Miss. 1986). An error is deemed "plain error" when the substantive rights of a defendant are affected. *Grubb v. State*, 584 So. 2d 786, 789 (Miss. 1991).

¶24. Johnson objects to the judge's admission of the crack cocaine introduced at trial, which he raises for the first time on appeal, based on an alleged break in the chain of custody. The record reflects that the State offered sufficient testimony from Officer Tolbert, Officer Holifield, and Brandi Goodman to satisfy the requirement of M.R.E. 901(a) [5] for establishing a proper chain of custody for admission of the cocaine at trial. Moreover, the trial court specifically asked defense counsel if he had any objections to introduction of the cocaine either as an exhibit for identification purposes only or for admission into evidence and counsel did not object on either occasion. As the trial court properly admitted the cocaine into evidence without any objection from Johnson, it cannot be said that the trial court "abused its discretion" or committed "plain error." We find that Johnson's claim of a break in the chain of custody is procedurally barred. Further, we find his claim is without merit.

**IV.    Sentence.**

¶25. A trial court has "sole discretion" for imposing an appropriate sentence in a criminal proceeding. *Corley v. State*, 536 So. 2d 1314, 1319 (Miss. 1988). A duly imposed sentence

---

[5] Mississippi Rule of Evidence 901(a) states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

"cannot be disturbed on appeal so long as it does not exceed the maximum term allowed by statute." *Fleming v. State*, 604 So. 2d 280, 302 (Miss. 1992). In the instant case, a sentence of thirty years given to Johnson was well within the statutory limit. The State sought to sentence him under Miss. Code Ann. § 99-19-81 as a habitual offender, which would subject him to the statutory maximum. Johnson was also subject to a penalty enhancement which could double his sentence since the sale occurred within 1,500 feet of a church. See Miss. Code Ann. § 41-29-142. Though the State wanted Johnson to serve 120 years, the judge declined to impose all of the enhancements requested by the State. The judge deemed a sentence of thirty years without parole appropriate because he felt that any greater sentence "would be practically a life sentence."

¶26.   Johnson, who is now 52 years old, argues that the trial court erred in sentencing him to thirty years without parole because it is equivalent to a life sentence. He claims that the case of *Stewart v. State*, 372 So. 2d 257 (Miss. 1979), requires the court to fix a sentence less than life. In *Stewart*, this Court reversed the trial court's decision to sentence a man convicted of armed robbery to seventy-five years in prison, which had the effect of a life sentence, as being beyond the time permitted by statute, where the sentencing statute permitted only a jury to impose a life sentence. *Stewart*, 736 So. 2d at 258-59. Unlike in *Stewart*, here the trial judge imposed a sentence that was less than maximum sentence allowed by statute. Johnson's reliance on *Stewart* is misplaced, and his claim that the trial court committed an error in sentencing is without merit.

V.     **Proposed Jury Instruction D-2.**

13

¶27. Johnson claims that the trial court erred when it refused his jury instruction on reasonable doubt, D-2. He argues that the judge was incorrect in finding that D-2 was cumulative of C-2 and that the denial of his instruction kept him from presenting his theory of the case. Johnson cites the case of *Murphy v. State*, 566 So. 2d 1201 (Miss. 1990), to bolster his argument.

¶28. In *Murphy*, this Court reversed the trial court's refusal to give one of the defendant's proposed jury instructions in a business burglary case that was based entirely on circumstantial evidence. The proposed instruction would have instructed the jury to acquit the defendant if it found that he had found the stolen goods at a garbage dump, as he claimed, rather than that he had broken and entered private property to steal the goods, as the State contended. *Murphy*, 566 So. 2d at 1206. We found that refusal of defendant's proposed instruction had prohibited him from instructing the jury as to his theory of the case, as no other instruction mentioned this theory, and we stated that "when a defendant's instruction is the proper statement of the law and is the only instruction that presents his theory of the case, it should be granted." *Id*. at 1207. However, the Court limited this holding by stating "a trial judge may refuse an instruction which incorrectly states the law, is without foundation in the evidence, or is stated elsewhere in the instructions." *Id*. at 1206 (citation omitted).

¶29. Johnson's reliance on *Murphy* in this instance is misplaced. Johnson's proposed jury instruction D-2 does not attempt to state any theory of his case; rather, he merely attempts to define reasonable doubt. The trial court determined that D-2 was cumulative of the court's instruction C-2, a more succinct instruction on reasonable doubt. This Court has previously stated that "[a] trial judge is under no obligation to grant redundant instructions" and that

14

"refusal to grant an instruction which is similar to one already given does not constitute reversible error." *Montana v. State*, 822 So.2d 954, 961 (Miss. 2002) (citations omitted). Thus, we find that the trial court committed no reversible error in refusing to give Johnson's proposed jury instruction D-2.

### VI. Claim of Cumulative Error.

¶30. Johnson argues that even if none of the above-charged errors, standing alone, requires reversal, the cumulative effect of those errors mandates a reversal of his conviction and sentence. In *Manning v. State*, 735 So. 2d 323, 352 (Miss. 1999), this Court stated that "[a] conviction and sentence may be reversed upon the cumulative effect of errors that independently would not require reversal. However, where 'there was no reversible error in any part, so there is no reversible error as to the whole,'" (citations omitted). Since this Court has found that the trial court committed no reversible error as to any issue previously raised by Johnson, we find that his claim of cumulative error is also without merit.

### CONCLUSION

¶31. We find that the trial court did not err in denying Johnson's motion for a JNOV or a new trial, as the jury verdict was supported by legally sufficient evidence and not contrary to the weight of the evidence. We also find that the pretrial identification procedures and in-court admission of Johnson's booking photo did not deprive Johnson of his due process rights. We find that Johnson waived his appeal concerning the chain of custody and admission of the cocaine, as he failed to object at trial. Further, such claim is without merit. Additionally, we find that the trial court did not err in sentencing Johnson to thirty years imprisonment without parole, as the sentence was within the statutory guidelines. We find that the trial court did not

15

err in refusing to grant Johnson's proposed jury instruction D-2 because the trial court accurately instructed the jury on reasonable doubt with instruction C-2. Based on the above findings, we also find that Johnson's claim of cumulative error is without merit. We affirm the conviction and sentence imposed by the Circuit Court of Wayne County.

¶32. **CONVICTION OF SALE OF COCAINE WITHIN 1500 FEET OF A CHURCH AND SENTENCE OF THIRTY (30) YEARS, WITHOUT PAROLE AND WITH CONDITIONS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, TOGETHER WITH PAYMENT OF FEES AND COSTS, AFFIRMED. SENTENCE SHALL BE SERVED CONSECUTIVELY TO ANY SENTENCE CURRENTLY IMPOSED ON THE APPELLANT. THE APPELLANT SHALL BE GIVEN CREDIT ON THIS SENTENCE FOR ANY TIME SERVED PRIOR TO THIS DATE IN THE WAYNE COUNTY JAIL FROM OCTOBER 1, 2002 TO SEPTEMBER 19, 2003, OR A TOTAL OF 347 DAYS.**

**SMITH, C.J., WALLER AND COBB, JJ., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**