# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-01228-COA

**RAY ANTHONY BEASLEY A/K/A RAY BEASLEY**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/11/2023 |
| TRIAL JUDGE: | HON. ELEANOR JOHNSON PETERSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ZAKIA B. CHAMBERLAIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | JODY EDWARD OWENS II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/03/2025 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**EMFINGER, J., FOR THE COURT:**

¶1.    Ray Anthony Beasley was convicted of statutory rape in the Circuit Court of Hinds County, Mississippi, and was sentenced to a term of thirty years in the custody of the Mississippi Department of Corrections, with eight years suspended and twenty-two years to serve. Beasley appealed his conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2.    Fifteen-year-old S.E. gave birth to a child, C.E., in December 2020. While she was pregnant, S.E. was living with her friend Kenasia Bowie. After C.E.'s birth, S.E. and C.E.

continued to live with Bowie. During January 2021, C.E. was not gaining weight, so they took him to the hospital. The medical providers questioned S.E. about C.E.'s father. Although S.E. would not identify C.E.'s father, she told the staff that the father was sixteen years old. At that point, the hospital contacted Child Protection Services (CPS), which then contacted the youth court.

¶3.     At the time, Jackson Police Detective Janice Henderson worked in the special victims unit that dealt with child abuse and sex crimes against juveniles. In February 2021, she began an investigation to determine the identity of C.E.'s father. Henderson determined that S.E. was born in March 2005. During her investigation, Henderson came to suspect that Beasley was C.E.'s father.[1] She also found that Beasley was born in 1979. She contacted Beasley, and he gave a voluntary statement and told Henderson that he had had sex with S.E. in his car in Jackson.[2]

¶4.     An indictment charging Beasley with statutory rape, in violation of Mississippi Code Annotated section 97-3-65(1)(a) (Supp. 2017), was returned by the grand jury on July 16, 2021. Beasley was arrested for the indicted charge on August 18, 2021.[3] The Hinds County District Attorney's Office subsequently obtained a warrant to take DNA samples from the

---

[1] The record does not show why Henderson believed Beasley could be the child's father.

[2] This statement was video recorded and introduced into evidence at trial.

[3] While the appellate record does not contain evidence to show that Beasley was charged or arrested prior to the indictment, in the "Order Revoking Bond" signed on September 29, 2023, the court notes that Beasley was released on bond on that charge on February 3, 2021.

defendant. Samples were also obtained from S.E. and C.E., and all were submitted to Scales

Biological Laboratory (Scales) for analysis. Scales issued a DNA report dated March 15,

2023, which determined that the probability that Beasley is the child's father is

"99.9999999996%, as compared to a randomly selected, unrelated man of the same race."

¶5.     After several hearings on pre-trial motions, some of which will be discussed below,

the case went to trial on October 9, 2023. The State's first witness was Henderson, who

described her investigation and her recorded interview with Beasley. Beasley's interview was

introduced into evidence and played for the jury. S.E. testified that she had sexual intercourse

with Beasley about four times a week during 2020 in the City of Jackson. She admitted on

cross-examination that she told medical personnel the child's father was sixteen years old and

gave them the name of another person. Eddie Robinson, an investigator with the District

Attorney's Office, testified about the collection of the DNA samples and delivering them to

Scales. George Schiro, from Scales, was the State's last witness. He testified as an expert in

the field of DNA testing and analysis. He gave his opinion as to the probability that Beasley

was C.E.'s father, consistent with his report as stated above.

¶6.     At the conclusion of the State's case-in-chief, the defense moved for a directed

verdict, which was denied. The defense did not call any witnesses. After being given

instructions by the court and hearing the closing arguments, the jury retired to deliberate.

The jury returned its verdict finding Beasley guilty of statutory rape. Beasley was sentenced

to a term of thirty years in the custody of MDOC, with eight years suspended, leaving

twenty-two years to serve. After the denial of his post-trial motion for judgment

notwithstanding the verdict or a new trial, Beasley appealed.

## ANALYSIS

¶7.     Beasley's issues on appeal will be restated and addressed below.

**I.      Did the trial court err by denying Beasley's motion pursuant to Mississippi Rule of Evidence 412(b)(1)(A) to admit evidence that his son could be C.E.'s father, and, if so, is reversal warranted?**

¶8.     The defense filed a "Motion to Admit Evidence Under Mississippi Rule of Evidence 412," seeking to admit evidence that one of the defendant's sons was "the source of S.E.'s pregnancy." The trial court denied the motion because it was not filed at least fifteen days before trial. *See* MRE 412(c)(1)(B). Beasley argued at trial, and argues on appeal, that under the facts of this case, the trial court should have exercised its discretion under Rule 412(c)(1)(B) and allowed a hearing on the motion at trial. The State contends that the motion was properly denied.

¶9.     On July 16, 2021, a Hinds County grand jury indicted Beasley on a charge of statutory rape. He was served with a copy of the indictment on August 18, 2021. His attorney filed a motion for discovery on September 1, 2021, in which he requested, among other items:

1.      Names and addresses of all witnesses proposed to be offered by the prosecution at trial, together with a copy of the contents of any statement, written, recorded or otherwise preserved, of each such witness and the substance of any oral statement made by any such witness. . . .

The victim in this case, who testified at trial, had given a recorded interview concerning the father of her child to a forensic interviewer with the Children's Advocacy Center (CAC).[4]

---

[4] A copy of the recording is not included in the record on appeal, and the record does not reveal the date of the interview.

4

¶10.    When the requested discovery materials had not been timely produced, the defense filed a motion to compel discovery on January 17, 2023, over sixteen months after the discovery request was made and almost nine months before the eventual trial. The motion again requested audio/video recordings from S.E.'s interviews, among other items of discovery. The docket reveals that the motion was granted by an order entered on January 20, 2023, and the State was directed to produce the recordings by March 1, 2023.[5]

¶11.    On March 16, 2023, the defense filed a "Second Motion to Compel Outstanding Discovery, and Motion for Continuance and Scheduling Order," again specifically requesting, among other items, "audio recordings of the alleged victim." The docket shows that the court conducted hearings on pre-trial motions on March 21, 2023. The trial court warned the State that discovery not produced would be inadmissible at trial. The defense's motion for a continuance was granted. There was no written order entered on the second motion to compel.

¶12.    The trial was apparently reset for October 9, 2023. On October 6, 2023, the Friday before the trial was to begin on the following Monday, the State produced, for the first time, the recording of S.E.'s forensic interview with the CAC. In this interview, S.E. gave previously undisclosed information concerning the identity of her baby's father, allegedly showing that someone other than Beasley was the child's father.

¶13.    At that point, the defense knew that the State intended to introduce DNA evidence to prove that Beasley had sexual intercourse with S.E. The report from the DNA expert

---

[5] While the trial docket shows that this order was entered and includes notations about the details of the order, the order itself is not included in the appellate record.

5

compared the baby's DNA to Beasley's DNA and concluded, as noted above, that "[t]he probability of paternity is 99.9999999996%, as compared to a **randomly selected, unrelated man of the same race**." (Emphasis added). To rebut this evidence, according to his motion, Beasley wanted to put on proof that one of his sons could be the baby's father. Mississippi Rule of Evidence 412(b)(1)(A) states:

> (b) **Exceptions**. The court may admit evidence of:
>
> > (1) specific instances of a victim's past sexual behavior:
> >
> > > (A) with a person other than the defendant, if offered by the defendant to prove that someone else was the source of semen, pregnancy, disease, or injury. . . .

¶14.    At a hearing on pending motions on the day trial was set to begin, the trial court, without hearing any argument by counsel, granted the State's motion in limine to prevent the defense from introducing any evidence of S.E.'s past sexual conduct because no notice had been timely given by the defense of its intent to introduce such evidence as required by the "rape shield statute." The defense then brought before the trial court its written motion to introduce Rule 412 evidence. Beasley's attorney reminded the court of the efforts that had been made to obtain the CAC recording well before trial. Despite the trial court's granting of the defense's motions to compel discovery and warnings that non-disclosed evidence would not be admissible at trial, the State did not turn over the CAC recording to the defense until the Friday before trial. Based upon information first revealed in the CAC interview, the defense argued that Beasley's daughter, Rashida, could testify that her brothers, Michael and Anthony, were around S.E. at the places and times S.E. stated in her interview that she saw

her child's father. However, the court ruled that such evidence would not be admitted because

> [n]umber one, none of those persons can say they actually saw this person engage in other intimate behavior. Number two, Section 412 which deals with sex offense cases, victims sexual behavior or predisposition requires notice and a hearing and an offer of proof sufficient. That has not occurred. They're entitled to notice of that.

The trial court then asked the defense if it intended to use the CAC interview at trial. Defense counsel requested time to consider the matter. But first, counsel advised the trial court that S.E. had first claimed that the father of her child was sixteen years old. Defense counsel asked if S.E. could be cross-examined concerning this prior statement.

¶15.    After a break in the proceedings, defense counsel told the court that the defense did not intend to use the CAC recorded interview but reiterated the defense's claim that the late disclosure of the interview was causing a "grave" violation of Beasley's due process right to present his theory of defense based upon S.E.'s recorded interview. The defense argued that Rule 412 provides an exception to the fifteen-day notice requirement where there is newly discovered evidence or where "the issue [has] newly arisen." *See* MRE 412(c)(1)(B). The trial court found that the defense should have filed a notice of its intent to introduce Rule 412 evidence a long time ago. However, the trial court took under advisement the defense's request to cross-examine S.E. concerning her prior statement that the father of her child was sixteen years old.[6]

¶16.    As the court continued to hear pre-trial matters, defense counsel continued to

---

[6] As noted above, S.E. did admit at trial that she had initially told the medical staff that the father of the child was sixteen years old.

7

investigate the information from the CAC recording. Defense counsel brought the matter

back before the court, and the following exchange occurred:

> BY MS. ROSENBLATT: Our Rule 412 motion that was filed yesterday that you ruled on this morning.

> BY THE COURT: Okay.

> BY MS. ROSENBLATT: We understood the Court's ruling and, you know, I've explained and I won't belabor that the course of the investigation and why the CAC interview was what prompted the investigation. We also understand the rape shield law and the purposes behind it and are not in the business of interrogating victims when we don't have a reason, a good faith reason to do so.

> But based on this Court's ruling earlier today that there was no direct evidence of a sexual relationship between the victim and one of Mr. Beasley's sons, our office did contact the victim and specifically asked her whether she had a sexual relationship with Anthony Beasley and her response was affirmative. So based on that infor –

> BY THE COURT: Do you think that's going to change the Court's ruling?

> BY MS. ROSENBLATT: I wanted to place that before the Court and on the record.

> BY THE COURT: Okay. It's still not admissible because the rules of criminal procedure require notice to the State and a hearing for the Court to resolve all of that prior to the trial in this case, not the day of and not the morning of. So –

> BY MS. ROSENBLATT: I would indicate that –

> BY THE COURT: – I will accept that for the record. Your motion has been noted, but it's still going to be denied, and, no, it will not be admissible during the trial of this case.

¶17.    All of the above occurred prior to jury selection on the day of the trial, which was less

than three days after the CAC recording was given to the defense. Despite the short period

of time within which to investigate the information on the recording, the defense proffered

8

the following evidence in support of its motion to introduce evidence pursuant to Rule 412 to rebut the State's DNA evidence:

> 1. S.E. first reported that her child's father was 16 years old, which is substantially different from the age of Beasley.
>
> 2. S.E. told CAC that she met her child's father at times and places where Rashida Beasley would testify that her two brothers and S.E. were all present.
>
> 3. S.E. admitted that she had sexual intercourse with Anthony Beasley, one of the defendant's sons.

¶18. Under the facts of this case, we find that the trial court erred in denying the defense's motion to admit evidence under Rule 412 as being untimely. Further, evidence that S.E. had sexual relations with the defendant's son should have been admitted to rebut the DNA evidence introduced by the State.[7] The defense should have been allowed to cross-examine S.E. in this regard. Further, the defense should have also been allowed to question the State's DNA expert witness as to whether the DNA test could determine whether Anthony or the defendant is the father of the child.

¶19. However, we find this error was harmless. In *Archie v. State*, 387 So. 3d 963, 972-73 (¶36) (Miss. 2024), the supreme court discussed a harmless error analysis:

> This Court has held that "[a]n error is harmless only when it is apparent on the face of the record that a fair minded jury could have arrived at no verdict other than that of guilty." *Gilmore v. State*, 119 So. 3d 278, 290 (Miss. 2013) (alteration in original) (internal quotation marks omitted) (quoting *Forrest v. State*, 335 So. 2d 900, 903 (Miss. 1976)). We explained that the "[r]elevant factors in determining whether error was harmless or prejudicial include

---

[7] While the State could have elected not to introduce the DNA evidence under the circumstances, it chose to proceed. Because the State offered the DNA results to prove that Beasley had sexual intercourse with S.E., Beasley was entitled to offer proof to rebut that inference.

9

'whether the issue of innocence or guilt is close, the quantity and character of the error, and the gravity of the crime charged.'" *Id*. (quoting *Ross v. State*, 954 So. 2d 968, 1018 (Miss. 2007)). In our case, the issue of guilt is not close, and a multitude of evidence, including eyewitness evidence, supported the verdict. Of course, the crime is of the highest gravity.

In the present case, S.E. was born in March 2005, and Beasley was born in October 1979. S.E. testified that, during 2020, she had sexual intercourse with Beasley "maybe four times a week." She stated that she had sex with him at his mom's house, at his house, and in his vehicle. Beasley admitted to having "sex" with S.E. in his vehicle during his interview with JPD Detective Henderson. Whether Beasley was the father of S.E.'s child or not, based upon S.E.'s testimony and the defendant's admission, a fair-minded jury could not have arrived at any verdict other than guilty in this case.

## II. Was the evidence legally sufficient for the jury to convict Beasley?

¶20. At the time of this offense, Mississippi Code Annotated section 97-3-65(1)(a) (Supp. 2017) provided as follows:

The crime of statutory rape is committed when:

(a) Any person seventeen (17) years of age or older has sexual intercourse with a child who:

(i) Is at least fourteen (14) but under sixteen (16) years of age;

(ii) Is thirty-six (36) or more months younger than the person; and

(iii) Is not the person's spouse[.]

The statute further provided a definition of sexual battery in subsection (7):

(7) For the purposes of this section, "sexual intercourse" shall mean a joining of the sexual organs of a male and female human being in which the penis of the male is inserted into the vagina of the female or the penetration of the

10

sexual organs of a male or female human being in which the penis or an object is inserted into the genitals, anus or perineum of a male or female.

*Id*. § 97-3-65(7). Beasley contends on appeal that the State's evidence was legally insufficient to support a statutory rape conviction because the State failed to prove that Beasley engaged in sexual intercourse with S.E. and failed to prove that S.E. was not Beasley's spouse.

¶21.    In *Jones v. State*, 380 So. 3d 974, 980 (¶13) (Miss. Ct. App. 2024), this Court described our standard of review for such claims:

> We review a challenge to "the legal sufficiency of the evidence" de novo, but the evidence must be "viewed in a light most favorable to the State." *Johnson v. State*, 904 So. 2d 162, 166 (¶7) (Miss. 2005). This means that "all credible evidence supporting a defendant's guilt should be accepted as true, and all favorable inferences drawn from the evidence must be reconciled in the prosecution's favor." *Id*. "We determine if any rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Williams v. State*, 285 So. 3d 156, 159 (¶11) (Miss. 2019). "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements." *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010). Rather, we must affirm the conviction as long as there is sufficient evidence for a rational juror to find that the State proved all the elements of the offense. *Id*.

¶22.    Beasley supports his contention that the State failed to prove he engaged in sexual intercourse with S. E. by citing the statutory definition and *Pittman v. State*, 836 So. 2d 779, 784-87 (Miss. Ct. App. 2002). However, the evidence in *Pittman* was substantially different than the evidence in the present case. In *Pittman*, the victim testified that the defendant attempted to have sexual intercourse with her and that he "never would stick it in, he'd just rub up and down me." *Id*. at 785 (¶22). While Pittman was convicted of other offenses, the court found that this testimony was insufficient to support a conviction of statutory rape,

11

which requires proof of penetration. *Id*. at 786 (¶31).

¶23. In the present case, the jury was instructed on the statutory elements of statutory rape and was instructed on the definition of sexual intercourse. S.E. testified that she and Beasley had sexual intercourse about four times a week each week during 2020. She did not describe the acts as "attempts" and she did not testify that there was no penetration. The jury also heard Beasley's interview in which he admitted to multiple acts of fondling but then stated that they also had sex once in his car.

¶24. The evidence in this case is more akin to the evidence in *Hunt v. State*, 81 So. 3d 1141, 1146 (¶18) (Miss. Ct. App. 2011), where this Court found:

> Hunt argues that there was no testimony specifically indicating penetration as required by Mississippi Code Annotated section 97-3-65(1)(b) (Supp. 2010). Hunt contends that J.B.'s testimony that she had intercourse with Hunt is insufficient to satisfy this element because she failed to specify that sexual intercourse entailed penetration. . . . [I]t is very clear that J.B.'s testimony established the element of penetration. Hunt's argument is that . . . J.B.'s repeated testimony concerning being forced into having "sexual intercourse" with Hunt is insufficient because she did not expressly state "penetration" had occurred. Hunt's trial counsel repeatedly used the term "sexual intercourse" as involving penetration. There is no ambiguity in this record. The verdict was supported by sufficient evidence.

Just as in *Hunt*, there is no ambiguity in this record. S.E. testified that she had sexual intercourse with Beasley many times. Viewing the evidence, S.E.'s testimony, and Beasley's interview, in the light most favorable to the prosecution, we find the evidence was legally sufficient.

¶25. Next, in a one-sentence argument, Beasley states, "The State also failed to offer any evidence that S.E. and Beasley were not married." However, the jury heard Beasley's

interview in which he described how he knew S.E. because she was a friend of his daughter. He described his interactions with her as giving her a ride on a few occasions. The jury also heard S.E. testify that she was fifteen years old in 2020 when she found out she was pregnant. She told the jury that during 2020, she was living between places because of issues with her mother. When asked whether she had ever lived with anyone other than her mother, she stated that she had lived with Bowie and her foster parent at the time of trial. The evidence showed that contact between Beasley and S.E. was limited to brief sexual encounters. Nothing indicated that they were married. As stated above in *Jones*, "all favorable inferences drawn from the evidence must be reconciled in the prosecution's favor." *Jones*, 380 So. 3d at 980 (¶13). We find that there was ample evidence in this case from which a rational juror could conclude, beyond a reasonable doubt, that S.E. was not Beasley's spouse. This issue is without merit.

## CONCLUSION

¶26.   We find that the evidence was legally sufficient for the jury to find Beasley guilty of statutory rape beyond a reasonable doubt. The trial court did not commit any reversible error. Beasley's conviction and sentence are affirmed.

¶27.   **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, WEDDLE AND ST. PÉ, JJ., CONCUR. WESTBROOKS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD AND McCARTY, JJ.**

**WESTBROOKS, J., SPECIALLY CONCURRING:**

¶28.   I concur that there was sufficient evidence to affirm Beasley's conviction.  While not

13

argued on appeal, I believe that the State's admission of the DNA evidence was error in light of Beasley's statement to law enforcement that he had sexual intercourse with S.E. The order granting the warrant for DNA evidence over Beasley's objection allowed for the confusion that Mississippi Rule of Evidence 412 seeks to prevent. It was a confusion invited by the State. Beasley's admissible statement to law enforcement that he had sex with her in his car and S.E.'s testimony that she and Beasley had sex four or five times alone was sufficient for a jury to find him guilty of statutory rape.

¶29. Accordingly, I specially concur.

**McDONALD AND McCARTY, JJ., JOIN THIS OPINION.**