# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2025-KA-00298-COA

**ERIK FLOUNTEZ GARDNER A/K/A ERIK GARDNER A/K/A ERIC F. GARDNER A/K/A ERIC GARDNER A/K/A ERIC FLOUNTEZ GARDNER A/K/A ERIK FLOUTEZ GARDNER**   APPELLANT

v.

**STATE OF MISSISSIPPI**   APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/06/2025 |
| TRIAL JUDGE: | HON. DAVID H. STRONG JR. |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JOSEPH SCOTT HEMLEBEN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | WILLIAM BRENDON ADAMS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/14/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McDONALD AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT**:

¶1.	A driver was pulled over by law enforcement after running a stop sign. Officers found marijuana, cocaine, methamphetamine, and two firearms in his SUV. As a result, the vehicle was impounded overnight at a local body shop, and the next morning body shop employees found a baggie full of fentanyl pills behind the gas cap of the SUV.

¶2.	The driver was later indicted and found guilty of possession of a firearm by a felon, trafficking of fentanyl, and aggravated trafficking of methamphetamine. On appeal, he only takes issue with his conviction for the trafficking of fentanyl. He claims the proof was

insufficient to find he had constructive possession of the fentanyl, and that the verdict was against the weight of the evidence. Finding no error, we affirm.

## BACKGROUND FACTS

¶3. The facts of this case are not in dispute. Minutes before midnight, Erik Gardner was stopped by law enforcement in Brookhaven while driving a black Ford Excursion. After he pulled over, officers smelled the odor of marijuana seeping out of the SUV. Gardner and the sole passenger, his sister, were subsequently ordered out of the Ford.

¶4. A search led to the discovery of a digital scale with a white, powdery residue in the center console area of the Excursion. Bodycam footage showed that officers also popped the hood of the SUV, and a duffel bag was found by the engine. It contained two handguns, a quantity of methamphetamine, and crack cocaine.

¶5. Gardner was read his rights and taken into custody. Gardner told law enforcement that his sister did not know anything regarding the drugs. Gardner's SUV was impounded and promptly transported to a local body shop.

¶6. The next morning, one of the body shop's employees arrived for work. The Excursion blocked his path, so he looked for the keys to move it out of the way. Unable to find the keys inside the vehicle, he looked behind the gas cap. When it was opened, a cellophane bag full of blue pills fell out. The authorities were called, and testing later revealed there were 184 pills and they were fentanyl.

¶7. A search of Gardner's phone revealed an image of him posing next to a black Ford Excursion while holding a handgun. It also contained a video of Gardner counting out

2

blue-colored pills.

¶8.    Consequently, Gardner was indicted on three counts.  First, for unlawful possession of a firearm by a felon; second, for the unlawful trafficking of at least forty dosage units of fentanyl; and third, for aggravated trafficking of at least two hundred grams of methamphetamine. Counts two and three were charged with a firearm enhancement.

## PROCEDURAL HISTORY

¶9.    At trial, the state called a half dozen witnesses.  First was one of the Mississippi Bureau of Narcotics agents who had stopped Gardner.  He explained the circumstances of the stop and that law enforcement had found meth, cocaine, and handguns in the Excursion. He also told the jury that Gardner had told him his sister was not involved with the drugs, and that "if it wasn't hers, then it had to be his."  The agent also explained the discovery of the dozens of fentanyl pills hidden behind the gas cap.

¶10.    Lincoln County Sheriff Steve Rushing took the stand to discuss a phone call Gardner made while housed in the local jail.  Calls out were recorded, and the jury heard a call Gardner made to a woman where he said, "[T]hey got me," and that law enforcement "looked under the hood, and they found it."

¶11.    The jury also heard from the tow truck driver for the body shop where the Excursion was towed.  He explained the body shop was surrounded by a cyclone fence, but it did not have barbed wire.  He detailed that motion-sensitive cameras were all around the fence. The cameras were sensitive enough that they were set off "all the time" by wandering dogs or cats.

3

¶12.   The State also put on proof from the State crime lab, which had tested and determined that law enforcement had seized 624.53 grams of methamphetamine, as well as 184 pills of fentanyl and some partial tablets.

¶13.   Once the State rested, the defense moved for a directed verdict.  The defense argued that "the chain of custody was lost on the vehicle itself" and the fact that the SUV was left at a private lot overnight raised enough doubt as to who was in possession of the fentanyl pills discovered the following day.  The trial court denied the motion.

¶14.   Gardner took the stand to testify in his defense.  Gardner first attempted to argue that he believed the initial stop was illegal, but admitted he "rolled [the] stop" sign that led to him initially being pulled over.  Defense counsel asked him, "[W]hat do you state to the jury regarding your guilt or innocence[?]"  Gardner responded, "I'm guilty, and I'm innocent."  While he was not going to concede guilt on "all three counts," he cryptically stated "some of the counts I'm both."

¶15.   But when asked specifically about the fentanyl pills discovered behind the gas cap, Gardner stated he had "no knowledge of that."  In the end, Gardner testified, "I'm not necessarily innocent, but I'm not necessarily guilty, too."

¶16.   On cross-examination, when the prosecution directly asked him about the methamphetamine found under the hood of his SUV, Gardner responded that he wanted to "plead no content," attempting to avoid answering the question as to whether he knew it was there.  The trial judge instructed Gardner to answer.  The defendant reluctantly responded that the meth "wasn't mine, but it was found in my truck."  The district attorney asked who

4

the drugs belonged to, and Gardner said, "I don't know." The defendant was asked if the "Dope fairy" brought the drugs, and Gardner responded that there was "[n]ot no dope fairy." He also disclaimed that the guns belonged to him.

¶17.    As to the fentanyl pills discovered the next morning, Gardner conceded, contrary to the theory of his defense, that "nobody was trying to set me up." Instead, he testified to the jury that the search of his SUV was the only set up, which he again proclaimed to be illegal.

¶18.    While still on cross-examination, the State brought in images and videos discovered on Gardner's cell phone. Specifically, the State asked about a picture that showed Gardner holding a gun that was the same make and model of the gun taken from under the hood at the scene. Gardner responded that it did not matter that the guns looked the same—"if you ain't got the serial number, that means it's not the same gun."

¶19.    Following this, the State asked about a video found on Gardner's phone that depicted him counting little blue pills like those found in the baggie hidden behind the gas cap. Gardner answered  by explaining to the jury that the video was from "over a year" ago and that the pills pictured were his "Xanax pills," not fentanyl.

¶20.    The State circled back to the methamphetamine and asked Gardner to whom it belonged. He admitted "if it's in my truck, evidently, it's in my possession." When asked if this reasoning also applied to the fentanyl pills discovered behind his SUV's gas cap, Gardner responded, "I don't know nothing about no fentanyl pills."

¶21.    The jury found Gardner guilty of all three charges. Gardner timely appealed and the case was assigned to this Court for review.

## DISCUSSION

¶22. On appeal, Gardner does not attack the convictions relating to his possession of methamphetamine or firearms. He only argues that the evidence was insufficient to support the conviction for unlawful possession of fentanyl and that the verdict was contrary to the weight of the evidence in relation to the conviction for unlawful possession of fentanyl. Finding no error, we affirm.

### I. There was sufficient evidence that Gardner constructively possessed the fentanyl pills.

¶23. Gardner first argues that the evidence produced by the State was "insufficient for conviction" in regard to the charge for possession of fentanyl. Through appointed appellate counsel, he contends that "since [he] did not have exclusive access to the Excursion, and since more than one person had access to the vehicle," this showed he did not have constructive possession of the pills.

¶24. "We review a challenge to the legal sufficiency of the evidence de novo." *Jones v. State*, 380 So. 3d 974, 980 (¶13) (Miss. Ct. App. 2024) (quoting *Johnson v. State*, 904 So. 2d 162, 166 (¶7) (Miss. 2005)). We view the evidence in the "light most favorable to the State." *Id*. "We determine if any rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Williams v. State*, 285 So. 3d 156, 159 (¶11) (Miss. 2019). "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements." *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010). "Rather, we must decide whether a reasonable juror could rationally say that the state did." *Id*. at 294 (¶20).

6

¶25. Mississippi law holds that it is "unlawful for any person knowingly or intentionally to possess any controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice[.]" Miss. Code Ann. § 41-29-139(c) (Supp. 2022). "To establish possession of a controlled substance, the State must produce evidence that a defendant (1) was aware of the presence of a substance, (2) was aware of the character of the substance, and (3) was consciously and intentionally in possession of the substance." *Williams v. State*, 334 So. 3d 68, 73 (¶5) (Miss. 2022) (citing *Haynes v. State*, 250 So. 3d 1241, 1244-45 (¶8) (Miss. 2018)). "Possession can be actual or constructive." *Walker v. State*, 390 So. 3d 504, 509 (¶14) (Miss. 2024).

¶26. Actual possession will be found when "the drug is actually found on the defendant's person (i.e., in his hands, mouth, pockets, etc.)." *Sills v. State*, 359 So. 3d 603, 610 (¶35) (Miss. 2023) (internal quotation marks omitted) (quoting *Glidden v. State*, 74 So. 3d 342, 348 (¶20) (Miss. 2011)). Meanwhile, "[c]onstructive possession exists where the contraband was not found in the defendant's actual physical possession but was 'subject to the defendant's dominion or control.'" *Walker*, 390 So. 3d at 509 (¶14) (quoting *Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971); *see also Terry v. State*, 309 So. 3d 1071, 1075 (¶14) (Miss. Ct. App. 2020) ("when the defendant owns or controls the premises where the contraband is found, there is a presumption of constructive possession of the contraband") (quoting *Jordan v. State*, 158 So. 3d 348, 351 (¶8) (Miss. Ct. App. 2014)).

¶27. In regard to "constructive possession, the State has to prove the defendant was aware

7

of the drug and intentionally, *but not necessarily physically*, in possession of it." *Sills*, 359 So. 3d at 610 (¶35) (emphasis in original).

¶28. Gardner's core theory at trial and on appeal is that he did not have constructive possession of the fentanyl. During trial, he testified that he believed someone was setting him up, and said he had no knowledge the pills were hidden behind the gas cap of the Ford. On appeal, counsel argues there also was a major break in the time between Gardner's arrest and when the pills were found, and that other people had access to the SUV after it was towed to the body shop.

¶29. These are defenses to constructive possession, but as this Court reasoned in *Clemts*, this Court must consider all of "the evidence in the light most favorable to the jury's verdict." *Clemts v. State*, 350 So. 3d 1165, 1169 (¶12) (Miss. Ct. App. 2022) (citing *Jones v. State*, 330 So. 3d 793, 803 (¶35) (Miss. Ct. App. 2021)). The jury heard Gardner say the Ford belonged to him, repeatedly calling it "my truck." They saw a photo of Gardner with the SUV. Scales were inside the cabin, and meth and guns were under the hood—all of which Gardner agreed were found inside his truck. While Gardner's trial strategy was to cast doubt on the security at the body shop where the SUV was impounded, the jury heard testimony that the shop was rigged with a cyclone fence and cameras so sensitive they would go off when a cat walked past.

¶30. The jury also heard a phone call Gardner made from jail where he talked about how "they got me," and they saw a video he took of himself counting out blue pills that looked very similar to the fentanyl pills found behind the gas cap. The jury also heard from Gardner

himself, who told them "I'm not necessarily innocent, but I'm not necessarily guilty, too."

¶31.    Given the evidence produced at trial, we find there was sufficient evidence to support the jury's guilty verdict.  Accordingly, we affirm.

**II.      The jury's verdict was not against the weight of the evidence.**

¶32.    Next, Gardner contends he is entitled to a "reversal with remand for a new trial" because the charge for possession of the fentanyl "lack[s] additional incriminating evidence to connect him beyond a reasonable doubt" to the possession of the fentanyl pills. Particularly, he argues that the only facts established at trial were that "the fentanyl was not found until the next day; multiple people had access to the vehicle; and [that] Gardner denied any knowledge of the drugs."

¶33.    "A challenge to the weight of the evidence addresses the trial judge's denial of a motion for a new trial, which we review only for an abuse of discretion." *Perkins v. State*, 392 So. 3d 690, 695 (¶7) (Miss. Ct. App. 2024) (citing *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017)).  The role of this Court is to "view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little*, 233 So. 3d at 289 (¶1).

¶34.    Importantly, "[w]e do not reweigh evidence. We do not reassess the witnesses' credibility.  And we do not resolve conflicts between evidence.  Those decisions belong solely to the jury." *Id*.

¶35.    Taking all the evidence discussed above into account, we cannot say that the jury's

9

verdict was against the overwhelming weight of the evidence. Gardner argues there was little proof the fentanyl was in his constructive possession. However, the jury was empowered to determine the credibility of each witness, including Gardner, and resolve any potential conflicts between the evidence presented to them. It was undisputed that Gardner was driving the SUV, that he called it his truck, and that the baggie of fentanyl pills was found behind its gas cap.

¶36. We find the trial court did not abuse its discretion by denying Gardner's motion for a new trial.

## CONCLUSION

¶37. For the above-stated reasons, we affirm Gardner's convictions and sentences as to all counts.

¶38. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**